**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jerome R. DILLARD, also known as Carl Williams, Defendant–Appellant.**

No. 89–3056.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1990.

Decided Aug. 17, 1990.

As Amended Nov. 1, 1990.

---

John W. Vaudreuil, Daniel P. Bach, Asst. U.S. Attys., Madison, Wis., for plaintiff-appellee.

David Engel, Sidley & Austin, Chicago, Ill., David L. Mandell, Madison, Wis., for defendant-appellant.

Before CUDAHY and EASTERBROOK, Circuit Judges, and SNEED, Senior Circuit Judge.*

PER CURIAM.

On September 18, 1989, the district court revoked defendant-appellant Jerome Dillard's term of supervised release and imposed a sentence of imprisonment of one year and one day. Dillard appeals and we affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

This case began on August 18, 1988, when Dillard pleaded guilty to falsely representing a social security account number as his own with the intent to deceive a bank, in violation of 42 U.S.C. § 408(g)(2) (1982). He was sentenced to 90 days imprisonment, which he completed on January 24, 1989, and a two-year term of supervised release. Dillard's term of supervised release required him to abide by fifteen standard conditions and two special conditions.

On May 3, 1989, Dillard's probation officer filed a violation report with the district court, specifically alleging that Dillard had violated the conditions of his supervised release by leaving the judicial district without permission and by not reporting for drug abuse counseling and urine screening. The district court at that time decided that no judicial review would be necessary if Dillard henceforth complied fully with the conditions.

Four months later, on September 6, 1989, the probation officer filed a petition for judicial review, in which she alleged that Dillard had continued to miss drug counseling and urine screening appointments, that he had failed to report twice weekly to his

---

* Hon. Joseph T. Sneed, of the Ninth Circuit, sitting by designation.

probation officer as required, that he had failed to maintain regular employment in a lawful occupation, and that, although his August 10 urine test results had not yet been received, he admitted to using cocaine on August 9.

A hearing before the district court was set for September 13, 1989. At the hearing, the parties fixed by stipulation the dates on which Dillard had missed meetings with his probation officer and on which he had failed to appear for drug counseling and urine testing.[1] Dillard also stipulated to his violation of the travel restrictions and his employment status.

At the hearing, Dillard's attorney sought to emphasize the positive side to appellant's record. He asserted that Dillard had attended at least one appointment with his probation officer weekly, that he had attended the overwhelming majority of such appointments and that he missed most of his drug counseling and urine surveillance appointments at the same time he had missed meetings with the probation officer. The government asserted that Dillard falsely represented to his probation officer that he was satisfying Standard Condition No. 6, the employment condition, by working as a locksmith apprentice at a hardware store, Service Hardware. To confirm this representation, the government asserts that the probation officer called Service Hardware and was told by the cashier that no one by Dillard's name worked there. In response to this evidence, Dillard's attorney presented to the court an apprentice locksmith card issued to Dillard by Service Hardware, and asserted that Dillard's possession of the card revealed that "he has maintained sporadic involvement with Service Hardware as evidenced by this document."

The district court found that Dillard had violated the terms of his supervised release in the following respects: (1) he failed to "report to the probation officer as directed," (2) he failed to " 'work regularly at a lawful occupation unless excused by a probation officer,' " (3) he "falsely stated that he was working as a locksmith at the Service Hardware," (4) he failed to " 'participate in a drug abuse program, urine surveillance,' " (5) he "admitted cocaine use on August 9, 1989 and that testing by the PharmCem Laboratory confirmed this illicit drug use." The district court then revoked the term of supervised release and sentenced Dillard to a term of imprisonment of one year and one day.

Dillard's appeal raises several challenges to the district court's decision. He claims that the court's revocation of the supervised release was improper because it was based on inadequate evidence that Dillard violated the travel restriction and employment condition. He challenges the district court's imposition of a term of incarceration and the length of the sentence. Finally, Dillard claims that he received ineffective assistance of counsel at the revocation hearing and that the ineffectiveness prejudiced him before the district court.

We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 (1988).

## II.

### DISCUSSION

Revocation of a term of supervised release is governed by 18 U.S.C. § 3583(e)(3) (1988), which authorizes a district court to:

revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provisions of applicable policy statements issued by the Sentencing Commission, except that a person whose term is revoked under this paragraph

---

1. Specifically, they agreed that Dillard had missed eight of thirty-nine meetings with his probation officer during the thirty-one weeks of his supervised release. Furthermore, he had missed sixteen appointments for either drug counseling or urine testing during this time period.

may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a Class B felony, or more than 2 years in prison if the offense was a Class C or D felony.

(Footnote omitted.)

### A. *Revocation of the Term of Supervised Release*

■ Our standard of review of a district court's decision to revoke a supervised release term is abuse of discretion. *See United States v. Barber*, 881 F.2d 345, 349 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990) (review decisions to revoke probation for abuse of discretion).[2]

Dillard argues that certain of the facts found by the district court are not supported by a preponderance of the evidence. First, he states that it was not properly established that he had violated the travel and employment conditions of his supervised release. The district court actually did not make a specific finding that Dillard violated the travel restriction. Rather, it based its revocation decision on other grounds. These were, to repeat, Dillard's failure to regularly attend meetings with his probation officer, his failure to appear regularly for drug abuse and urine testing, his failure to work regularly at a lawful occupation, and his confirmed use of cocaine on one occasion. Dillard no doubt relies on the fact that the district court did, at one point, state that there were "two violation reports in this case," the second of which concerned the probation officer's report that Dillard "failed to tell her that he was driving a truck and was traveling outside of the area." However, no finding concerning this alleged violation was ever made. Therefore, it does not help Dillard to argue that the evidence does not properly show that he violated the travel restriction.

■ The district judge concluded, however, that Dillard did not "work regularly in a lawful occupation," as required by the terms of his supervised release. We see no error in this finding. The issuance and possession of a locksmith apprentice card proves nothing other than that Dillard initially signed up with Service Hardware and that Service Hardware was prepared to take him on as a locksmith apprentice. The card in no way demonstrates that Dillard was engaged in "regular" employment with Service Hardware. Even Dillard represented at the revocation hearing that the card revealed only that "he has maintained sporadic involvement with Service Hardware." That is not enough. "Sporadic" involvement does not constitute "regular" employment.

Dillard points to the alleged weaknesses of the government's proof. He says that his probation officer's call to Service Hardware was improperly documented. He hints that the person who indicated that Dillard did not work there might have not had accurate information. Yet, Dillard fails to produce any credible proof, such as pay stubs or an affidavit from a supervisor, that would show that he was a regular employee of Service Hardware. We thus hold that the preponderance of the evidence establishes a violation of the employment condition.

■ Moreover, Dillard's use of cocaine violated the first condition of his supervised release that he not "commit another federal, state or local crime." [3] That alone

---

**2.** We have found no case in this circuit that sets forth the standard of review for revocation of supervised release under 18 U.S.C. § 3583(e). We apply the abuse of discretion standard, noting that the supervised release program, although unique, is a not-so-distant cousin of the probation and parole programs. All three programs allow defendants the possibility of early freedom, which is a privilege. As such, revocation of supervised release should be subject to review for abuse of discretion.

**3.** Cocaine is a Schedule II controlled substance, *see* 21 U.S.C. § 812(c) (1988); Wis.Stat.Ann. § 161.16(2)(b) (West 1989), possession of which is unlawful, *see* 21 U.S.C. § 844(a) (1988); Wis. Stat.Ann. § 161.41(3m) (West 1989). Knowing use of cocaine, which Dillard admitted to here, requires possession, even if only momentarily. Thus, Dillard's admitted use of the drug, confirmed by laboratory testing, was illegal under federal and state law. *See United States v. Rodriguez,* 831 F.2d 162, 167 (7th Cir.1987) (possession of controlled substances may be actual or

provided a sufficient basis for the district court's revocation of the supervised release.[4] We hold that the district court did not abuse its discretion in revoking Dillard's term of supervised release.

## B. *Imposition of the Term of Incarceration*

Dillard's principal challenges are directed at the imposition of a term of incarceration. He asserts that the district court failed to identify the factors on which it based its decision to impose a sentence of incarceration. Moreover, he contends that the violations of supervised release conditions were but failures to comply fully with "several technical requirements" of the release term.

A district court is required by 18 U.S.C. § 3553(c) (1988) to "state in open court the reasons for its imposition of the particular sentence." *See United States v. White,* 888 F.2d 490, 495 (7th Cir.1989). In this case, the district court did so. The judge said:

> [V]ery few of the people that are placed on probation or supervised release ever come back into court for any reconsideration of their custody.
>
> It is something that I take very seriously, because I think that it is a real indication of a person's ability to do well totally free of any kind of supervision. I do look upon it as some sort of privilege that a lot of people aren't entitled to, and I view it with a great deal of disappointment when somebody fails to live up to the conditions that are imposed upon him or her on release.
>
> It is crucial to the system that people who are released on probation or supervised release do live up to the expectations that are placed on them and that if they don't, that they receive some sort of

punishment which indicates to them and to others that this kind of release is a serious matter and that the conditions placed on the release are ones that are to be honored, however onerous they may seem to the person that's under the obligations.

> \*   \*   \*   \*   \*   \*
>
> I believe that in order to indicate to you the seriousness of these obligations that are placed upon you and to convey that same message to other people who are placed on probation or supervised release, that a significant sentence is required.
>
> Therefore, I'm imposing the following sentence. . . .

The above reasons fall squarely within those cited in 18 U.S.C. § 3553(a)(2) (1988). Specifically, they address explicitly the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Given that the district court has authority to sentence Dillard to a term of imprisonment for violation of "*a* condition of supervised release" 18 U.S.C. § 3583(e)(3) (emphasis added), it serves no purpose to conjecture whether the particular conditions violated were mere "technical requirements." However, even were we to do so, we would conclude that the violated conditions were more than mere "technical requirements" of the supervised release term. The violations go to the very heart of the supervised release program, which provides an offender with the opportunity to experience freedom and to build a law-abiding lifestyle for himself while still under the regular supervision of the department of corrections. *See United States v. Montenegro-Rojo,* 908 F.2d 425, 432–33

---

constructive and may be established by direct or circumstantial evidence).

**4.** The Sentencing Guidelines contain the following policy statement:

    (a) Upon a finding of a violation of probation involving new criminal conduct, other than criminal conduct constituting a petty offense, the court shall revoke probation.

    (b) Upon a finding of a violation of probation involving conduct other than conduct under subsection (a), the court may (1) revoke probation; or (2) extend the term of probation and/or modify the conditions of probation. United States Sentencing Commission Guidelines Manual § 7A1.2 (1989).

(9th Cir.1990) (discussing generally congressional intent in creating the supervised release program).

Dillard has raised no valid objections to the district court's imposition of a sentence of incarceration following the revocation of his supervised release term. We stated in *United States v. Verbeke*, 853 F.2d 537, 539 (7th Cir.1989), that "[t]here is no requirement that a probationer be given another chance." Even were we inclined to be a bit more forgiving, we note that Dillard has already had more than one chance. Upon receiving the first violation report lodged against him, the court deferred review and decided to give him another chance to comply with the conditions of his release. Dillard, although given ample opportunity, failed to put his best foot forward.

## C. *The Length of the Term of Incarceration*

■ It is true, as Dillard recognizes, that the Sentencing Guidelines do not explicitly address what constitutes an appropriate sentence upon finding a violation of supervised release conditions. At this point Dillard makes his most appealing argument. He urges us to look to the Sentencing Guidelines, and by use of analogy, determine the appropriate sentence. *See United States v. Underwood*, 880 F.2d 612, 619–21 (1st Cir.1989). Using this approach, Dillard states that under the Sentencing Guidelines, he could have received a prison sentence of no longer than eight months,[5] and that the imposition of any sentence in excess of eight months should be justified by proof of aggravating circumstances.

Dillard correctly asserts that Congress sought uniformity in sentences when it established the Sentencing Commission. That purpose, he argues, would be frustrated had Congress given judges, in sentencing a defendant after revoking supervised release, the discretion to impose a

sentence that exceeded the allowable first-time sentence for the underlying offense.

This argument notwithstanding, Congress did what Dillard says they ought not to have done. Section 3583(e)(3) allows a district court to "require the person [whose supervised release is revoked] to serve in prison all or part of the term of supervised release without credit for time previously served on post-release supervision...." Thus, the district court was authorized to give Dillard up to two years in prison on the basis of the length of his two-year supervised release term.

Section 3583(e)(3) also uses the felony categories to limit the sentence a defendant can receive upon revocation of supervised release. However this language would not change the result. The limit for a class D felon like Dillard is also two years.

In the legislative history of the statute, Congress revealed why it did not require district courts to conform to the Guidelines when imposing sentences after revocation of supervised release terms. As the Ninth Circuit has observed: "In passing § 3583, Congress sought to replace a parole system in which the length of post-incarceration supervision was dependent upon the length of the original prison term with a supervised release system in which the length of such supervision is dependent solely on the defendant's need for supervision after release from jail." *Montenegro–Rojo*, 908 F.2d at 432. Thus, the length of supervised release term does not bear a direct relation to the initial sentence, nor to the maximum possible initial sentence, since the term of supervised release is to be tailored to the needs of individual defendants. Furthermore, the implications of section 3583's provisions reveal that Congress intended district courts to have the authority to sentence defendants to a significant term of imprisonment "in consequence of a violation of the conditions of

---

**5.** Dillard draws this conclusion based on the application of Sentencing Guidelines § 2F1.1 to

Dillard's particular offense and criminal history category.

supervised release." *See United States v. Hoffman,* 733 F.Supp. 314, 315 (D.Alaska 1990). We conclude, therefore, that the district court did not err in fixing Dillard's period of post-release incarceration at a term that exceeded the maximum allowable initial sentence.[6]

### D. *Ineffective Assistance of Counsel*

Finally, Dillard claims that his representation at the revocation hearing was constitutionally ineffective. Specifically, he asserts that his attorney failed to challenge inaccurate information contained in the probation officer's report and to investigate or bring to the court's attention a number of relevant facts. To support these vague assertions, Dillard states that his attorney did not introduce the locksmith apprentice card into evidence (although informing the court of its existence), failed to show that Dillard was employed and complying with employment conditions, and did not show that Dillard had not violated the travel restriction.

Dillard's assertions do not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Dillard bears the burden of showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Kubat v. Thieret,* 867 F.2d 351, 359 (7th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). He has not carried his burden.

A careful reading of the revocation hearing transcript reveals that Dillard's attorney zealously represented him. Counsel presented a thoughtful and reasoned defense of Dillard at each phase of the hearing, raising arguments quite similar to those raised on appeal. As to the specific objections cited in Dillard's brief, Dillard has failed to convince us that there is any evidence concerning his employment status that his attorney might have introduced

which would have altered the district court's conclusion that the employment condition had been violated. And, as indicated above, it is immaterial that evidence pertaining to the travel restriction condition was not introduced.

### III.

### CONCLUSION

For the reasons set forth above, we affirm the district court's revocation of Dillard's term of supervised release and its imposition of a post-release sentence of one year and one day.

AFFIRMED.

---

6. By means of comparison, we note that Congress has explicitly limited the length of a sentence imposed after *probation* to the maximum possible at initial sentencing. 18 U.S.C. § 3565(a)(2) (1988) (a court may "revoke the sentence of *probation* and impose any other sentence that was available ... at the time of the initial sentencing") (emphasis added).