**UNITED STATES of America, Plaintiff,**

v.

**Albert JOHNSON, Defendant.**

**Crim. No. SA–88–CR–149.**

United States District Court,
W.D. Texas,
San Antonio Division.

April 5, 1991.

Mark Barrett, Asst. U.S. Atty., San Antonio, Tex., for plaintiff.

Alfredo R. Villarreal, Asst. Federal Public Defender, San Antonio, for defendant.

## ORDER

SUTTLE, Senior District Judge.

Having reviewed the Government's Motion for Reconsideration of Order Denying Government's Motion to Revoke the Supervised Release of Defendant and the Defendant's Response thereto, the Court ORDERS that its Order of March 19, 1991 be WITHDRAWN from the record and the following Order entered in its stead.

This Defendant now before the Court is the same individual that was found guilty following a jury trial on January 10, 1989 and sentenced by the Court in a judgment entered on April 26, 1989.

Section 3583(e)(3) of Title 18, United States Code, provides that a court may revoke a defendant's term of supervised release "if it finds by a preponderance of the evidence that the person violated a condition of supervised release." Section 3583(d) of Title 18, United States Code, meanwhile, provides in pertinent part as follows:

(d) Conditions of supervised release.—The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not possess illegal controlled substances.

Section 3583(f) of Title 18, United States Code, provides as follows:

The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

*Id.* The Court complied with the directives of § 3583(d) by advising the Defendant as follows at the sentencing hearing:

"Upon release from imprisonment, the defendant shall be placed on supervised release for a period of 3 years. *While on supervised release, the defendant shall not commit another federal, state, or local crime;* shall comply with the General Rules of Supervised Release as adopted by the Court and filed on November 16, 1987, and shall comply with the following additional conditions:

1. That the defendant shall participate in a program approved by the Probation Office of urinalysis testing and, if necessary, treatment of narcotic addiction or drug dependency.

2. The defendant shall be prohibited from possessing a firearm or dangerous weapon.

3. The defendant shall not use or possess methadone for treatment, or in any other manner, shape or form, without *express authority of the court.*"

(Emphasis added). However, although it might be argued that the Court complied with § 3583(f) inferentially in that the above-quoted passage from the judgment implicitly instructs the Probation Officer to give Defendant a written copy of the terms of his supervised release, the Court is compelled to conclude that it did not discharge its duty under § 3583(f) by explicitly directing the Probation Officer in open court to provide Defendant with a written copy of the terms of his supervised release. Having reached this conclusion, the Court is left with the question whether the Government can nevertheless establish by a preponderance of the evidence that Defendant has violated a term of his supervised release so as to justify the revocation of his supervised release.

■ As noted above, the law requires the Court both to indirectly and directly inform a defendant of the terms of supervised release. It likewise directs that a probation officer, as a part of his duties, "shall instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions." Section 3603(1) of Title 18, United States Code. Moreover, the Court notes that Chapter V of the Probation Manual, Volume X of the *Guide to Judiciary Policies and Procedures* published by the Administrative Office of the United States Courts, which sets out the procedures to be followed by a probation officer in supervising an individual on probation or supervised release emphasizes time and again the necessity of providing a defendant with a written copy of the terms of supervised release and obtaining the defendant's signature on the copy to acknowledge his receipt of the same.[1]

---

1. Chapter V of the Probation Manual, which was admitted into evidence by agreement of the parties, provides in pertinent part as follows:

1. *Duties of Probation Officer.*

A defendant who has been ... placed on supervised release shall be supervised by a probation officer to the degree warranted by the conditions specified by the sentencing court. 18 U.S.C. § 3601. It shall be the duty

However, as the Government points out, nowhere has Congress provided that the failure of the Court to instruct the Probation Officer to provide a defendant with a written copy of the terms of his supervised release or that the failure of the Probation Officer to so provide a defendant with a written copy of the terms of his supervised release automatically precludes the revocation of the defendant's supervised release. While the Court initially viewed the exclusion of any mention of sanction in the statutes as unpersuasive in light of Congress' statutory requirement that a defendant be provided a written copy of the terms of supervised release, the Court now believes that the more appropriate reading is that while Congress requires the provision of a written copy of the terms of supervised release to assure fundamental fairness at the time of sentencing, the failure of the Probation Officer in this case to provide a written copy of the terms of supervised release to this Defendant is harmless error *when, as here, the Defendant has been advised expressly by the Court at the time of sentencing of the specific condition of supervised release which the Government alleges, as ground for revocation of the Defendant's supervised release, the Defendant has violated.*

The Court's reading is based on the following language in a Senate Committee Report discussing the proposed § 3563(d):

> [A]n error in the recitation of conditions in the statement, or even an accidental,

of the probation officer supervising the case to:

A. instruct the ... person on supervised release as to the conditions specified by the sentencing court and *provide the person with a written statement clearly setting forth all such conditions;*

\*　\*　\*　\*　\*　\*

4. *Opening the Case.*

The court shall direct the probation officer to provide the defendant with a written statement which sets forth all the conditions of the sentence and which is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as required. 18 U.S.C. § 3563(d).

\*　\*　\*　\*　\*　\*

The probation officer should take certain steps to open the case when a defendant is ... received for supervised release. These steps include:

A. reviewing the Conditions of Probation and Supervised Release (Probation Form 7A) with the person on supervised release. *Both the probation officer and the person under supervision must sign the form. The probation officer shall keep the original of the form for the file and give the copy to the person under supervision;*

\*　\*　\*　\*　\*　\*

H. recording the first interview for the chronological record to include a statement that the conditions of supervision were reviewed *and signed;*

\*　\*　\*　\*　\*　\*

J. reviewing the Judgment and order for accuracy and *providing a copy to the person under supervision.*

5. *Delayed Probation or Supervised Release.*

*The probation officer should obtain the defendant's signature on the conditions immediately after sentencing if the court imposes ... a period of supervised release to follow con-*

*finement....* *If the defendant refuses to sign the conditions, the officer should note the refusal on the form and advise the defendant of the responsibility to nonetheless follow the conditions.*

*When a probation officer is unable to get the conditions of supervised release signed before confinement, the officer in the sentencing district should locate the place of confinement. If the defendant is confined within the sentencing district in a non-Bureau of prisons facility, the officer should visit the facility to obtain the defendant's signature.* If confinement is outside the sentencing district in a non-BOP facility, the officer should provide the unsigned conditions to the probation office in the district of confinement and request an officer from that district obtain the defendant's signature. Once the conditions are signed, copies should be provided to the defendant and the community programs manager (CPM). The officer in the sentencing district should retain the original. If the defendant is released outside the sentencing district, the officer in the receiving district should initiate supervision and jurisdiction transfer.

*If the defendant is confined in a Bureau of Prisons facility or contract community corrections center (CCC), the probation officer in the sentencing district should provide the original and four copies of the unsigned conditions of supervised release to the Bureau of prisons. The Bureau will obtain the defendant's signature on the conditions and provide the signed original to the probation officer in the sentencing district.* One copy will be retained in the institution file. *At the time of release, the Bureau will provide one copy to the inmate and attach a copy to the Notice of Release and Arrival which will be sent to the officer in the district of supervision.*

Probation Manual, Chap. V (emphasis added).

failure to supply such a statement, should not necessarily be construed as a reason to impugn the propriety or validity of a decision to revoke or modify the probation because of a breach of a condition actually imposed, *since the court will have stated those conditions during the sentencing proceeding in any event.*

*Id.* at n. 222 (emphasis supplied). Johnson tries to avoid application of this language on the basis that it applies to *probation* rather than *supervised release.* However, the Court finds this to be a distinction without distinction.

Supervised release, which was created by the Comprehensive Crime Control Act of 1984, is substantially similar to probation so as to make the above-quoted language applicable to supervised release. *See United States v. Dillard,* 910 F.2d 461, 464 (7th Cir.1990) (supervised release program, although unique, is a not-so-distant cousin of the probation and parole programs); *United States v. Dick,* 773 F.2d 937, 940 (7th Cir.1985) (Comprehensive Crime Control Act of 1984 established new type of sentencing option, called "SUPERVISED RELEASE," that is SIMILAR to PROBATION but is intended to replace parole). *See also* S.Rep. 225, 98th Cong., 2d Sess. 1, 122–125, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3305–3308 (discussing new Section 3583).

■ Thus, contrary to the Defendant's argument that the Government must prove that Johnson received a written copy of the terms of his supervised release as part of its burden of proof to establish a basis for revocation of his supervised release, the Court finds that the Government must only prove by a preponderance of the evidence that Johnson was orally advised by the Court at the sentencing hearing of the term of his supervised release which he is now charged to have violated.

■ The evidence adduced at the hearing fails to establish by a preponderance of the evidence that the probation officer complied with the directives of the Court, §§ 3583(f) and 3603(1), or the quoted directives of the Probation Office Manual

and personally supplied Johnson with a written statement of the terms of his supervised released. The Government has not established that Defendant ever received a written copy of the terms of his supervised release by any of the other methods outlined in the Probation Office Manual. There is likewise no evidence that the District Clerk ever mailed a copy of the judgment and sentence to the Defendant. In short, there is no evidence that the Defendant in this case ever received such a copy from anyone. However, the Government has established beyond question that the Court orally advised Defendant of the condition of his supervised release that he not commit any federal, state, or local crimes, at the sentencing on April 26, 1989 and that the Probation Officer orally advised him of the same on November 8, 1989. This is sufficient for several reasons.

First, the term is concise, simple and straightforward, to-wit: Defendant, do not commit any other federal, state, or local crimes. Defendant, being a man of average intelligence, cannot argue with any degree of persuasion that this term is incomprehensible. Moreover, it is a term which merely reiterates the obvious mandate that all citizens must abide by, to-wit: Obey the law. Thus, in that sense, it is not a requirement peculiar to a defendant being placed on supervised release at the time of sentencing. Rather, it is a condition of life to be observed and adhered to by all citizens. As noted by the Sixth Circuit:

"[E]ven if he may not have had direct knowledge that he was on [supervised release], any reasonable person should recognize that punishable criminal conduct could not be excused. It would ... [elevate] formality over common sense, if [supervised release] could not be revoked in such a case for the commission of a crime merely because no one specifically admonished him not to commit a crime."

*Tiitsman v. Black,* 536 F.2d 678, 680–681 (6th Cir.1976).

Thus, regardless of the length and complexity of the standard conditions of supervised release (a possible maximum of 19

terms) and the special conditions of supervised release, the Court is satisfied that Defendant was able to comprehend this particular term or condition of his supervised release simply through hearing it from the mouth of the Court.

There is no doubt that the Government has proved that Johnson is the same individual who was convicted in the Texas state court for the offense committed on April 24, 1990. The Government also has proved by a preponderance of the evidence that Johnson is the same defendant convicted in this Court by a jury on January 10, 1989, and sentenced by this Court on April 26, 1989. However, the Government has not established that Johnson ever received a written copy of the terms of his supervised release.

A review of the record and exhibits admitted at the evidentiary hearing shows that the Defendant's probation officer, Don C. Yunger, did not give him a written statement of the terms of his supervised release immediately after entry of judgment on April 26, 1989. Johnson, immediately after sentencing, was imprisoned in the Wackenhut Facility in San Antonio, Texas. However, on June 8, 1989, Johnson suffered a stroke and was transferred to the Bexar County Medical Center. On June 26, 1989, Johnson was transported by the U.S. Marshal's Office to the Springfield Medical Center in Missouri. Johnson was released from imprisonment on November 7, 1989. He reported to Probation Officer Dan Baur on November 8, 1989. Although Probation Officer Baur stated that he had no specific recollection of the meeting, his notes reflect that he did discuss on that date the conditions of supervised release in great detail with Johnson and that Johnson understood the conditions. He did not "provide [him] with a written statement clearly setting forth such conditions" although he had a written copy of such conditions in his file with a blank signature line for Defendant's signature to acknowledge receipt. On February 8, 1991, in a long-distance telephone conversation with Johnson's current supervising Probation Officer, Probation Officer Baur stated that he "was shocked" to learn that he had not done so.

At the time of the alleged violations of conditions of supervised release on April 24, 1990 and December 7, 1990, Johnson still had not been provided with a written copy of the terms of his supervised release. All that the Government has shown by a preponderance of the evidence is that both the Court and the Probation Officer did orally advise Johnson not commit any other federal, state, or local crimes, the exact term of supervised release he is charged with violating. Is this enough?

Perhaps if Defendant had been charged with violating some other term of his supervised release the Court would be inclined to cling to its first order and deny the Government's motion. However, it is precisely because of the fact that Johnson has been charged and proven to have violated the exact term of his supervised release of which the Court and the Probation Officer orally advised him that it must abandon its first order and now order his supervised release revoked. Despite the lack of any evidence that Johnson received a written copy of the terms of his supervised release, the Court finds that the Government has established by a preponderance of the evidence that Johnson knew that he was not to commit any other federal, state or local crime and that he has done so in violation of the terms of his supervised release.

Accordingly, it is ORDERED that the Government's Motion for Reconsideration of Order Denying Government's Motion to Revoke Supervised Release of Defendant be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that the Government's Motion to Revoke Supervised Release of Defendant be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED counsel and the Defendant appear for the final hearing for resentencing at 10:00 a.m. on Monday, April 8, 1991.

SO ORDERED.