**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John Curtis KINDRED,**
**Defendant–Appellant.**

**No. 89–8007.**

United States Court of Appeals,
Fifth Circuit.

Nov. 20, 1990.

William Alberts, Austin, (Court-appointed), Tex., for defendant-appellant.

Michael R. Hardy, LeRoy Morgan Jahn, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, THORNBERRY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

John Kindred appeals the district court's decision to revoke his supervised release and sentence him to two additional years in prison. We find no error in the receipt of a urinalysis report through the testimony of the probation officer, reject other asserted errors, and affirm.

I.

On August 1, 1988, John Kindred plead guilty to passing counterfeit notes and received a sentence of ten months in prison

and three years supervised release. The district court imposed standard conditions on the supervised release, including requirements that Kindred not violate any criminal laws, report truthfully to his probation officer, and refrain from the use and possession of illegal drugs. Kindred served the prison term and began his supervised release on August 24, 1989, under the supervision of Officer Lu Juana Speer.

On September 13, 1989, Officer Speer filed a Petition on Probation and Supervised Release with the district court alleging that Kindred tested positive for drugs on August 12, 1989, submitted a false urine sample on September 6, 1989, and admitted to purchasing and using drugs over a three day period. Officer Speer requested that the conditions of Kindred's supervised release be modified to require that he reside in a drug treatment center for 120 days and participate in a drug aftercare program. Kindred agreed to the modification and waived his right to a hearing, and the district court entered an order modifying the conditions on Kindred's supervised release as requested on September 13, 1989.

Kindred then completed a detoxification program and entered the REAP residential drug treatment center on September 15, 1989. Kindred attained several treatment goals during his first eight days at the center, but on the eighth day a REAP counselor discharged him for poor attitude and rule infractions. The counselor who discharged Kindred testified at the revocation hearing that the REAP staff believed Kindred was not benefitting from the program and was disrupting the other patients. Kindred also allegedly violated four REAP rules by smoking on a porch, listening to a radio in his room, talking in class, and falling asleep during free time. However, the counselor admitted at the revocation hearing that smoking on the porch and listening to the radio did not in fact violate REAP rules and that REAP guidelines concerning sleep during free time were inconsistently enforced and ambiguous.

On September 25, 1989, Kindred reported his suspension to Officer Speer and told her that he intended to present the matter to a REAP grievance committee. Officer Speer immediately filed a second Petition on Probation and Supervised Release in which she realleged the grounds listed in the first Petition and added that Kindred had been discharged from the REAP drug treatment center. On October 24, 1989, after an evidentiary hearing, the district court revoked Kindred's supervised release and sentenced him to two additional years in prison. Kindred now appeals to this court.

## II.

Kindred raises three issues in his appeal. First, he claims that the district court erred in admitting a urinalysis report through the testimony of his probation officer. Second, he contends that the district court based the revocation on improper grounds. Finally, he requests that we remand the case to the district court for a written statement specifying the evidence upon which it relied in revoking his supervised release.

### a. *Right of confrontation.*

■ The district court admitted a urinalysis report through the testimony of Officer Speer, Kindred's probation officer. Kindred claims that this violated his right to confront and cross-examine adverse witnesses under the Sixth Amendment. He relies largely on *United States v. Caldera,* 631 F.2d 1227 (5th Cir.1980), where we held that the district court erred in allowing a police officer to testify in a probation revocation hearing to the results of field tests and laboratory tests identifying cocaine.

Since *Caldera,* "courts considering the admissibility of hearsay in revocation proceedings have adopted an approach which balances the parolee's interest in confronting a particular witness against the government's good cause for denying it, particularly focusing on the 'indicia of reliability' of a given hearsay statement." *Farrish v. Mississippi State Parole Bd.,* 836 F.2d 969, 978 (5th Cir.1988). This approach finds support both in the Supreme Court's dicta in *Gagnon v. Scarpelli,* 411 U.S. 778, 783 n. 5, 93 S.Ct. 1756, 1760 n. 5, 36 L.Ed.2d

656 (1973), and *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972), and in the notes accompanying Fed.R.Crim.P. 32.1, which urge courts to apply evidentiary rules flexibly in revocation hearings.[1] Rule 32.1 became effective in December of 1980, after our decision in *Caldera.* Thus the bind of *Caldera* has been cut by later events.

We find persuasive *United States v. Penn*, 721 F.2d 762 (11th Cir.1983), where the Eleventh Circuit rejected a Sixth Amendment challenge to the admission of urinalysis tests in a probation revocation hearing through the testimony of a probation officer. The court distinguished *Caldera*, noting that it preceded the adoption of Rule 32.1 and relied only on a case involving a criminal trial, and applied the balancing approach that we recognized in *Farrish.* Urinalysis reports "are the regular reports of a company whose business it is to conduct such tests," and the government has an interest in minimizing the difficulty and expense of procuring witnesses for revocation hearings. *Id.* Thus, "[i]n the absence of any evidence tending to contradict Penn's drug usage or the accuracy of the lab tests, his confrontation rights were not infringed by the admission of [his probation officer's] testimony...." *Id.* *See also United States v. Bell*, 785 F.2d 640 (8th Cir.1986) (also finding no Sixth Amendment violation in the admission of urinalysis tests through a probation officer).[2]

Like Penn, Kindred did not contest the allegations of drug use or the accuracy of the urinalysis test. We thus find no Sixth Amendment violations.

### b. *Grounds for revocation.*

In the second Petition for Probation and Supervised Release, Officer Speer alleged four grounds for revoking Kindred's supervised release: Kindred tested positive for drugs on August 12, 1989, submitted a false urine sample on September 6, 1989, admitted to purchasing and using drugs over a three day period on September 6, 1989, and was discharged from the REAP drug treatment center on September 15, 1989. Kindred contends that it was an abuse of discretion to base the revocation on the first three grounds because they previously served as a basis for the modification, and a violation of due process to base the revocation on the last ground because his discharge from the REAP drug treatment center did not clearly violate a condition of the supervised release.

The problem that Kindred faces is the mandatory language of 18 U.S.C. § 3583(g). Section 3583(g) required the district court to revoke the supervised release and impose a prison term not less than one-third of the term of supervised release once it found that Kindred possessed a controlled substance.[3] Contrary to Kindred's contention, our decisions do not preclude a district court from basing revocation on pre-modification violations; in fact, we expressly left the issue open in *United States v. Tyler*, 605 F.2d 851, 853 (5th Cir.1979). All of the cases cited by Kindred involved either undue delay or an absence of fair warning. *See Tyler*, 605

1. "An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Gagnon*, 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5. In *Gagnon*, the Court held that due process mandates preliminary and final probation revocation hearings.

2. Our decision in *Farrish*, involving a Sixth Amendment challenge to a probation officer's testimony that a third party told the officer that he bought drugs from the probationer, is not contrary. Regular business reports, like the urinalysis tests, are ordinarily more reliable than oral hearsay statements.

Although *Farrish* cites *Caldera* with approval, we believe that the result in *Caldera* is inconsistent with the balancing approach that this court has since adopted.

3. Knowing use of drugs is akin to possession. *See United States v. Dillard*, 910 F.2d 461, 464 n. 3 (7th Cir.1990) (interpreting § 3583(e)).

F.2d at 851; *United States v. Simmons,* 812 F.2d 561 (9th Cir.1987); *United States v. Hamilton,* 708 F.2d 1412 (9th Cir.1983); and *United States v. Dane,* 570 F.2d 840 (9th Cir.1977), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978). In Kindred's case, by contrast, the pre-modification violations occurred within three months of the final revocation and involved criminal conduct expressly made a condition of the supervised release. We thus find no abuse of discretion.

The Eighth Circuit recently reached a similar result in *United States v. Young,* 756 F.2d 64 (8th Cir.1985). *Young* involved a modification order requiring the probationer to participate in a residential alcoholism treatment program. When Young was expelled from the program, his probation officer filed a Petition for Probation Action citing both pre-modification violations and Young's failure to complete the program. The court held that it was clearly within the discretion of the district court to determine which factors to consider in reaching the revocation decision, noting that the pre-modification violations were not stale because they occurred within ten months of the revocation order. *Id.* at 65. In fact, Kindred presents an even stronger case for affirmance because § 3583(g) left the district court with no discretion.

In any event, any error in basing the revocation on Kindred's problems at the REAP drug treatment center was harmless because § 3583(g) mandated the revocation for drug use.

### c. *Procedural due process.*

█ In his final point of error, Kindred urges us to remand his case to the district court for a written statement specifying the evidence upon which it relied in revoking his supervised release. A written statement is a requirement of procedural due process in ordinary probation revocation hearings. *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); *United States v. Martinez,* 650 F.2d 744 (5th Cir.1981); and *United States v. Lacey,* 648 F.2d 441, 444–45 (5th Cir.1981). The written statement requirement serves both to provide a basis for review and to encourage accuracy in factfinding. *Black v. Romano,* 471 U.S. 606, 613–14, 105 S.Ct. 2254, 2258–59, 85 L.Ed.2d 636 (1985).

There is little point in remanding, however, because the evidence presented at the October 24, 1990 revocation hearing overwhelmingly showed that Kindred had possessed a controlled substance, and the district court had no alternative but to revoke his supervised release under § 3583(g). *Compare Munguia v. U.S. Parole Commission,* 871 F.2d 517 (5th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989) (holding that pre-hearing notice that the Parole Commission could apply an earlier conviction against the probationer to deny him credit for "street time" was not required because a federal statute mandated the denial of credit); and *Pickens v. Butler,* 814 F.2d 237 (5th Cir.1987), *cert. denied,* 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987) (holding that a final revocation hearing was not necessary because Louisiana law mandated parole revocation upon the conviction of a second felony).

The judgment is AFFIRMED.