UNITED STATES of America,
Plaintiff, Appellee,

v.

Luis O. RAMOS–SANTIAGO, a/k/a
Gordo, Defendant, Appellant.

No. 90–1758.

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1991.

Decided Feb. 4, 1991.

Frederic Chardon Dubos, Carolina, P.R., by Appointment of the Court, for defendant, appellant.

Rosa Emilia Rodriguez Velez, Asst. U.S. Atty., with whom Daniel F. Lopez–Roma, U.S. Atty., was on brief, Hato Rey, P.R., for the U.S.

Before CAMPBELL and CYR, Circuit Judges, and POLLAK,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

On August 21, 1989 defendant Luis O. Ramos Santiago ("Ramos") began a three year term of supervised release after serving the imprisonment portion of his sentence.[1] During the next nine months Ramos' urine analysis administered by a probation officer tested positive for narcotics use on sixteen different occasions. Upon motion filed by the probation officer, Ramos was arrested on June 13, 1990 for allegedly violating the conditions of his supervised release. Subsequently, Ramos waived his right to a preliminary hearing before a magistrate to determine if there was probable cause to hold a revocation hearing, and on June 27, 1990, after a hearing before the district court, Ramos admitted the probation officer's allegations. The sentencing judge revoked the supervised release term and committed him to prison for a two year period.

* Of the Eastern District of Pennsylvania, sitting by designation.

1. Ramos pleaded guilty to willfully, knowingly, and unlawfully having in his possession a stolen Treasury check in violation of 18 U.S.C. § 1708.

Appealing from the above, Ramos raises three issues. First, he contends that the district court erred by not directing the probation officer to provide him with a written statement setting forth all of the conditions to which the term of supervised release was subject, pursuant to 18 U.S.C. § 3583(f). Second, he asserts that the court erred, prior to the revocation proceedings, in issuing an order to show cause that failed to state the alleged violations and to disclose the evidence against him, in violation of Fed.R.Crim.P. 32.1(a)(2)(A) & (B). Finally, Ramos contends that his term of imprisonment, upon revocation of supervised release, should have been determined under the Sentencing Guidelines' provision for unlawful possession of a controlled substance. We discuss each contention in turn.

I.

Under 18 U.S.C. § 3583(f), the court has a duty to

direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the terms of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

Ramos claims that the court never ordered that the written statements of conditions be provided to him. It is, however, undisputed that on May 11, 1989, upon being sentenced by the district court, Ramos and his counsel received copies of the sentence, to which were attached, *inter alia*, the conditions of his supervised release. The sentence provided that,

[w]hile on supervised release, the defendant shall not commit any crimes, federal, state or local and shall comply with the standard conditions of supervised release promulgated by the Sentencing Commission ...

He was sentenced to four months imprisonment, a three year term of supervised release, and restitution of one hundred sixty-nine dollars to a store in Cidra, Puerto Rico.

Among the standard conditions of supervision attached to the sentence was the requirement that "the defendant ... shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance...." It seems clear, therefore, that the essentials of the notice required in 18 U.S.C. § 3583(f) were met.[2] Ramos and his counsel received notice that he was not to commit crimes nor was he to use controlled substances. This notice was sufficiently clear and specific, in relevant respects, to serve as a guide for his expected behavior during the term of supervised release.

## II.

■ Ramos' second contention is that the court's show cause order prior to revocation failed to state the alleged violations of the supervised release term, in violation of Fed.R.Crim.P. 32.1(a)(1)(A), and that he was not informed of the evidence that was going to be used against him at the revocation hearing, in violation of Fed.R.Crim.P. 32.1(a)(2)(B).[3]

While it is true the show cause order itself did not state the alleged violations, these were specifically stated in the government's motion for revocation of supervised release dated June 5, 1990. As this motion notes, Ramos had earlier been notified after the fourth urine analysis tested positive for use of narcotics, that the probation officer was submitting an informative motion to the court explaining the recent findings, but recommending that Ramos be given an opportunity to continue under supervision. This occurred on March 20, 1990. The first motion had given Ramos and his counsel forewarning that the probation officer viewed his use of narcotics as a violation of the conditions of supervised release. Thereafter, when Ra-

mos' urine analysis tested positive on twelve subsequent occasions the probation officer filed the revocation motion, this time asking the court to revoke Ramos' supervised release. Served on Ramos' counsel several days prior to the show cause order, that motion stated the twelve subsequent violations, including dates of tests and substances found. Thereafter, Ramos waived a probable cause hearing. We find that the notice requirements of Fed.R.Crim.P. 32.1(a)(1)(A) were fully satisfied.

Ramos was also informed of the evidence to be used against him. Both motions specified the dates on which the urine tests were taken and the substances allegedly found on each occasion. This was the evidence relied upon by the probation officer and ultimately the court to revoke the term of supervised release. Ramos could have challenged the evidence at the preliminary hearing but waived this right. Thereafter, at the revocation hearing itself, where he could likewise have contested the charged violations, Ramos admitted the allegations of the motion for revocation. We find no merit, therefore, in Ramos' challenge to the notice and to the other procedures surrounding revocation of his supervised release.

## III.

■ Ramos' final contention is that the district court erred in ordering him to serve a two year period of imprisonment following revocation of supervised release. In making this argument he points to language in 18 U.S.C. § 3583(e)(3) which authorizes imprisoning a violator "pursuant to the provisions of applicable policy statements issued by the Sentencing Commission...." Ramos then suggests that the court should have based his term of impris-

---

**2.** The probation officer further testified that it would have been normal practice to furnish Ramos with the conditions of his supervised release when he was released from prison where he served his term of imprisonment.

**3.** Fed.R.Crim.P. 32.1(a)(2)(A) provides that whenever a person is held in custody on the grounds that the person has violated a condition of supervised release, a preliminary hearing shall be held to determine probable cause. The

person shall be given notice of the preliminary hearing and its purpose and of the alleged violation. Under Fed.R.Crim.P. 32.1(a)(2)(B), the person whose supervised release is to be revoked shall receive full disclosure of the evidence against him. *See Black v. Romano,* 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985) (setting forth due process requirements for revocation of probation).

onment on some analogue to guideline sentencing for the offense of unlawful possession of heroin or a schedule I or II opiate. This argument is similar to that made by the defendant in *United States v. Scroggins*, 910 F.2d 768 (11th Cir.1990). We agree, however, with the analysis and conclusions of the Eleventh Circuit in that case. At the time Ramos was sentenced, the sentencing guidelines furnished no yardstick for imprisonment following revocation of release; the guidelines only set norms for sentencing for original criminal offenses.[4] The only guidelines provision directly relevant here to revocation of supervised release stated,

> [u]pon a finding of a violation of supervised release involving new criminal conduct, other than criminal conduct constituting a petty offense, the court shall revoke supervised release.

§ 7A1.3 The most explicit directions material to Ramos' situation are found in the provision in the criminal code relating to revocation of release for possession of controlled substances. Section 3583(g) of Title 18 provides:

> If the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release.

This provision, being the most specifically relevant to Ramos, takes precedence over § 3583(e)(3) in his case. The court here acted in compliance with § 3583(g): it revoked release and imposed a prison term (two years) *not less than* one-third of Ramos' three year supervised release term. We find no legal error in the punishment imposed. Nor do we find the court's action to have been in any way unreasonable under the circumstances.

*Affirmed.*

---

**4.** Revisions to the Guidelines effective November 1, 1990, do, for the first time, provide policy statements relative to revocation of supervised release. These were not in effect at the time Ramos' release was revoked.