UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-8492
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANE CLARK COURTNEY,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
_____

(November 25, 1992)

Before BROWN, GARWOOD, and DEMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

The district court, by order dated August 16, 1991, revoked appellant Dane Clark Courtney's six-year term of supervised release for possession of cocaine and, pursuant to 18 U.S.C. § 3583(e) & (g), required him to serve twenty-four months imprisonment, followed by three years of supervised release. He brings this appeal, challenging his sentencing and the determination that he possessed cocaine. We vacate and remand.

## Facts and Proceedings Below

On July 11, 1989, Dane Clark Courtney (Courtney) was indicted for distributing "crack" cocaine on a playground on June 27, 1989,

contrary to 21 U.S.C. §§ 841(a)(1) & 845a (now § 860). Courtney pleaded guilty to the charged offense on September 25, 1989. During his presentence interview, Courtney admitted that he had been using "crack" for approximately one and one-half years, and that he progressed from using "crack" once a day to a maximum of four times a day until the day of his arrest. Dr. Steven L. Mark evaluated Courtney and gave his opinion that Courtney was dependent on the drug at the time of the offense. On November 17, 1989,

Courtney was sentenced by the district court to twenty-seven months confinement followed by six years of supervised release. On May 1, 1991, he began his supervised release at a halfway house.

Courtney began his visits with his probation officer, LaDonna Jackson (Jackson) on June 27, 1991. On his next two visits on July 1, 1991, and July 9, 1991, he submitted urine samples which tested positive for cocaine metabolite. Courtney denied to Jackson using drugs on either occasion and explained to her that the drugs might have entered his system by "kissing a girl," and that he had a number of girlfriends.

On July 30, 1991, a motion was filed to revoke Courtney's release for having "used and possessed cocaine on or about July 1, 1991 and July 9, 1991." A hearing on this motion was held before the sentencing district judge on August 15, 1991. At the hearing, Courtney, represented by counsel, pleaded "not true." Jackson testified to the taking of the samples and Courtney's statements to her regarding the results as above related. She explained that the laboratory performed the tests pursuant to a contract to do such testing for United States Probation offices. On cross-examination,

she stated that in her experience and training, an illegal drug, such as cocaine, will remain in an individual's system for a maximum of approximately seventy-two hours. Jackson also testified on cross-examination that the laboratory analysis did not indicate a specific quantity or amount of cocaine in the urine samples, but that the laboratory will not issue a positive result unless the sample reveals at least 300 nanograms per milliliter of cocaine metabolite. There was no objection to any of Jackson's testimony.

Courtney testified that after he left the halfway house, he lived with a woman who smoked "crack" cocaine on at least three different occasions while they were in bed together. Courtney acknowledged that Jackson had warned him against using, or associating with anyone that used controlled substances, but that he did not take the warning seriously. He did not dispute the taking of the urine samples. He also admitted that prior to his conviction he smoked a large amount of cocaine, and that he associated with other "crack" smokers.

The sentencing district court found that Courtney had violated the terms of his supervised release by using and possessing cocaine. In making this finding the district court stated:

> "I have heard evidence in a number of other cases that the reason this testing company will return a negative result for less than 300 nanograms per milliliter of cocaine is because all of the testing that has been done indicates that the maximum amount that can be found or ingested into a human system passively is 100 nanograms or less. So anything less than three times the maximum that could be ingested passively they return as a negative result to eliminate that possibility. Therefore, the Court would have no choice, at least in my view, of finding that Mr. Courtney has violated the terms of his supervised release by using and possessing cocaine, and that his supervised release will be

3

revoked."

The district court then revoked Courtney's supervised release and required him to serve twenty-four months confinement to be followed by three years supervised release. The district court based this disposition on 18 U.S.C. § 3583(g) which mandates that the supervised release be terminated and the defendant be required to serve in prison at least one-third of the original supervised release term where he is found to have been in possession of a controlled substance.[1]

## Discussion

Courtney raises two basic issues on appeal. First, he complains that the district court erred by assuming once it established use from the urinalysis report, then it must find possession. Second, he contends that the district court improperly ordered him to be both confined and subject to a following term of supervised release because under 18 U.S.C. § 3583(e) & (g) the district court is prohibited from ordering both a period of imprisonment and a period of supervised release after revoking the original term of supervised release.

---

[1]    The court stated:  "The period of supervised release was six years or 72 months.  Title 18, Section 3583(g) mandates a sentence of at least one-third of that in this case, so the Court would have no discretion but to impose a sentence of 24 months, which will be done in this case, to be followed by three years of supervised release."
    Section 3583(g) states that: "If the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release."  18 U.S.C. § 3583(g).

4

*I.  Use and possession*

The district court felt compelled to apply section 3583(g) because its determination based on the laboratory analysis that Courtney used "crack" cocaine ineluctably led to the conclusion that he possessed the substance.  Courtney complains that he need not be found to be in possession of an illegal substance based on the mere evidence of a positive drug test.  He argues that a positive result might be evidence of use but one could not conclude that this evidence of use required a finding of possession.  Therefore, the district court had the choice of only finding use and applying section 3583(e)[2] while avoiding the requirements of section 3583(g).  In determining Courtney's complaints, we review the district court's interpretation of the statutes *de novo*. *United States v. Headrick*, 963 F.2d 777, 779 (5th Cir. 1992).

Courtney relies on *United States v. Blackston*, 940 F.2d 877

---

[2]     Section 3583(e) provides in part that:

> "The Court may . . .
>
> (1) terminate a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release . . .
>
> (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release . . .
>
> (3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease  supervision . . .
>
> (4) order the person to remain at his place of residence during nonworking hours . . . ."  18 U.S.C. § 3583(e).

(3d Cir. 1991), for the proposition that there exists a distinction between use and possession, and that although evidence of the former can serve as a basis for finding the latter, the district court is not required to conclude that the use constituted possession.

The *Blackston* court found such a distinction based on the overall structure of section 3583. This section requires as a condition of supervised release "that the defendant not possess illegal controlled substances." 18 U.S.C. § 3583(d). This section also makes reference to 18 U.S.C. § 3563(b)(8) which authorizes courts to order as a condition of supervised release that the defendant "refrain from . . . any use of a narcotic drug or other controlled substance . . . without a prescription by a licensed medical practitioner." We disagree that these two supervised release conditions create a meaningful distinction for purposes of § 3583(e) & (g) between use and possession of a controlled substance.

As the *Blackston* court notes, possession, as used in criminal offense statutes, has a settled meaning of "actual physical control or of the power and the intent to exercise dominion or control." *Id.* at 883. It is further settled that in this context possession must be knowing. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS, CRIMINAL CASES, INSTRUCTION NO. 1.31 (West 1990). The *Blackston* court does not define use but merely states that use and possession are somehow different. *Id.* at 884. The court exhaustively reviews the legislative history behind section 3583(g) and finds it inconclusive on this issue. *Id.* at 884-86. In addition, the court

6

acknowledges that other federal circuits have uniformly found use to necessarily require possession. *Id.* at 887-88. *See, United States v. Dillard*, 910 F.2d 461, 464 (7th Cir. 1990); *United States v. Graves*, 914 F.2d 159, 161 (8th Cir. 1990); *United States v. Kindred*, 918 F.2d 485, 487 n. 3 (5th Cir. 1990); *United States v. Ramos-Santiago*, 925 F.2d 15, 16 (1st Cir. 1991).

The act of simple knowing possession of a controlled substance is a federal criminal offense. 21 U.S.C. § 844.[3] There is no federal statutory provision which in terms criminalizes "use" or "consumption" of a controlled substance. However, it is not a defense to an otherwise established simple possession offense that the defendant did not possess the substance because he merely used or consumed it. *United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985) (defendant had "possession over the cocaine since he had the ability to *use* it, remove it, and therefore to exercise dominion and control over the substance") (italics added). Had Congress chosen to separately criminalize use and simple possession, then the argument would be stronger that use is separately defined from simple possession with separate legal elements. But, under the present statutory scheme for criminal offenses, use is subsumed within possession.

This conclusion would still exclude passive inhalation from

---

[3]     Section 844(a) provides in relevant part that:

"It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice . . . ." 21 U.S.C. § 844(a).

7

both possession and use. Possession requires the knowing exercise of dominion or control. Similarly, in a sentencing or revocation context it is clear that "use" requires knowing and voluntary ingestion. But once the court finds a substance has been voluntarily and knowingly ingested, then, at least in almost any imaginable circumstance, it necessarily follows that the defendant has possessed the substance. In short, there is no "use" exception to possession: if one knowingly and voluntarily exercises dominion and control over a substanceSQas by putting it in one's mouth and swallowing it knowing what it isSQone possesses it, and this conclusion is in no way altered by the fact that the same facts may constitute one's "use" of the substance. By the same token, it would not, for sentencing or supervised release purposes, be either "use" or "possession" if one believed the ingested substance was some other (non-controlled) substance or ingested it involuntarily or unknowingly.

If evidence establishes that a positive result from a drug test is at a level such that passive inhalation or similar phenomenon may not reasonably account for it, then the district court may find that the defendant knowingly and voluntarily had, alone or jointly with others, actual physical control over the drug, or the power and intent to exercise dominion or control over it, and was hence in possession of it.[4] The district court may

---

[4]    This holding is in accord with the Sentencing Commission which in Application Note 5 to Guidelines § 7B1.4 states that it "leaves to the court the determination of whether evidence of drug usage established *solely* by laboratory analysis constitutes 'possession of a controlled substance' as set forth in 18 U.S.C. §§ 3565(a) and 3583(g)." *Id.* (emphasis added). The Ninth

ordinarily rely solely on this evidence,[5] but being the trier of fact, its duty, of course, is to draw the appropriate inferences and determine "factual contentions and whom to believe." *Hall v. United States*, 404 F.2d 1368, 1369 (10th Cir. 1969).

Jackson's undisputed and unobjected to testimony established that the two positive tests for cocaine were the result of two separate incidents of cocaine inhalation and that the positive results contained at least 300 nanograms per milliliter of cocaine metabolite.[6] But, there was no evidence as to the significance of a 300 (or more) nanogram reading, as distinguished from any other

---

Circuit has also recognized that the Sentencing Commission explicitly grants to the district court discretion to determine whether positive laboratory analyses evidences possession. *United States v. Baclaan*, 948 F.2d 628, 630 (9th Cir. 1991).

This also accords with cases decided under 18 U.S.C. § 3565, the counterpart to section 3583(g), for probation revocation. Section 3565 also requires revocation for possession of a controlled substance. Under this section, courts have determined that a positive result from laboratory analysis supports a finding of possession. *United States v. Gordon*, 961 F.2d 426 (3rd Cir. 1992); *United States v. Granderson*, 969 F.2d 980 (11th Cir. 1992).

[5] Here there appears to exist evidence corroborating the positive laboratory analyses. The district court could take into account Courtney's prior use of the drug and his drug addiction, his admission that he did not take seriously Jackson's warning to avoid drug users, and his inconsistent explanations concerning the alleged passive inhalation. An admission by the defendant is not required.

[6] Jackson's testimony established that cocaine will only cause a positive result within seventy-two hours of ingestion. Tests were taken on July 1, and July 9, which are periods that are more than seventy-two hours apart. Therefore, the district court could have determined from the evidence that Courtney was exposed to cocaine from two separate incidents. *See, United States v. Kindred*, 918 F.2d 485, 486-87 (5th Cir. 1990) (allowing as evidence "the admission of urinalysis tests in a probation revocation hearing through the testimony of a probation officer").

positive reading, or whether it, or any other aspect of the test results, were such as could not reasonably be accounted for by passive inhalation.[7]

The district court, in finding that the level of cocaine metabolite from the urinalysis tests could not be the result of passive inhalation, merely relied, *sua sponte*, on his general recollection of unspecified testimony, in unidentified prior cases from unidentified witnesses, that only a maximum of 100 nanograms per milliliter of cocaine can result from passive inhalation. In this respect, the district court erred. Revocation hearings are not formal trials and the usual rules of evidence need not be applied. *See* Advisory Committee Notes to Fed. R. Crim. P. 32.1(a)(2); *Kindred*, 918 F.2d at 486-87. Nevertheless, the district court here simply went an informality too far. Unspecified testimony by unidentified witnesses in unidentified prior cases may properly form no material part of the "preponderance of the evidence" on which the district court must base its section 3583(e) decision, and critical reliance thereon

---

[7] In an analogous Texas state court case, the trial court revoked the defendant's probation for possession of marihuana based solely on a positive urine sample. *Brown v. State*, 760 S.W.2d 748 (Tex. Ct. App.SQTyler 1988). The defendant argued that the positive result was caused by passive smoke inhalation. The appellate court upheld the revocation relying on the expert testimony indicating that the positive test result required a level of at least 100 nanograms per milliliter and "that passive inhalation of marijuana smoke would not produce a result of 100 nanograms per milliliter." *Id*. at 749. The court concluded that "the State established by a preponderance of the evidence that Brown violated the laws of this State by possessing a usable quantity of marihuana since Brown's urine tested positive for marihuana at a level greater than is found for passive inhalation." *Id*. at 750.

denies the defendant the character of hearing contemplated by Rule 32.1(a)(2) and prevents this courtSQwhich has nothing before it (either as part of anything includable in the record below or otherwise) tending to indicate that test results positive for cocaine with levels of not less than 100 (or any other number of) nanograms may not be accounted for by passive inhalationSQfrom meaningful exercise of its duty of review.

On remand, the district court should have a proper record basis for concluding that a positive result on the tests may not reasonably be accounted for by passive inhalation. This could be adequately established through expert testimony, or by the probation officer's testimony, *see Kindred*, 918 F.2d at 487, or perhaps through judicial notice based on an adequately developed foundation and prior notice and opportunity to rebut. *See* Rule 32.1(a)(2) & Fed. Rule Evid. 201.

If such a record is developed, then the district court needs to determine if Courtney voluntarily and knowingly ingested the cocaine and thus possessed it. If so, the district court must apply section 3583(g). *Kindred*, 918 F.2d at 488 (holding once possession is found, "the district court had no alternative but to revoke his supervised release under § 3583(g)").

*II. Sentencing requirements*

The district court ordered Courtney imprisoned for twenty-four months followed by three years of supervised release. Courtney complains that this is improper because under 18 U.S.C. § 3583(e) the district court is prohibited from ordering both a period of imprisonment and a period of supervised release on revocation of an

11

original term of supervised release.  In its brief, the government states that "it appears that the imposition of the additional term of supervised release was error, and that remand for resentencing would be appropriate."

We accept the government's concession.

As held in *United States v. Holmes*, 954 F.2d 270 (5th Cir. 1992), the language of 18 U.S.C. § 3583(e) does not allow a district court to revoke a term of supervised release and then impose both a term of imprisonment and an extended term of supervised release following that prison term.  *Id.* at 272.  Once a term of supervised release is revoked, it no longer exists and cannot be used as the basis for a new term of supervised release following imprisonment.  *Id*.  Therefore, the *Holmes* panel reversed that part of the judgment, vacated the sentence, and remanded to allow the district court to sentence "with all legal choices before it."  *Id.* at 273.

## Conclusion

Accordingly, the district court's August 16, 1991 order is vacated and the matter is remanded for proceedings not inconsistent herewith.

VACATED and REMANDED

12