# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2021

Lyle W. Cayce
Clerk

No. 20-50225

United States of America,

*Plaintiff—Appellee*,

*versus*

Kevin Chance McElroy,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:11-CR-63-5

Before Owen, *Chief Judge*, and Jolly and Dennis, *Circuit Judges*.
Per Curiam:*

Kevin Chance McElroy appeals the district court's revocation of his term of supervised release, arguing that the district court erred by admitting a positive urinalysis report despite the Government's failure to adhere to the procedures set forth in *United States v. Grandlund*,[1] and by admitting the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

[1] 71 F.3d 507 (5th Cir. 1995), *clarified by* 77 F.3d 811 (5th Cir. 1996) (per curiam).

No. 20-50225

report in a revocation proceeding without a finding of good cause to disallow his right to confrontation. McElroy also challenges the sufficiency of the evidence supporting the district court's finding that he possessed cocaine in violation of his conditions of supervision. We affirm.

**I**

In 2011, McElroy pleaded guilty to conspiracy to possess with intent to manufacture methamphetamine and was sentenced to 84 months of imprisonment—later reduced to 65 months—and three years of supervised release. McElroy began serving his term of supervised release in January 2018. In August 2018, the probation office filed a report stating that McElroy had admitted to using crack cocaine. No action was taken. In July 2019, after a random urinalysis was positive for methamphetamine, McElroy admitted to using the drug for a two-week period and consented to a modification of the conditions of his supervised release. Accordingly, the district court added a condition to McElroy's supervision requiring him to participate in inpatient substance abuse treatment, including testing during and after completion of the program, and to abstain from the use of alcohol and all intoxicants. Upon arrival at drug treatment, McElroy admitted that he had recently used methamphetamine, and his probation officer filed a report accordingly. The court took no action and afforded McElroy the opportunity to complete inpatient treatment, which he did in October 2019.

In January 2020, McElroy's probation officer filed a Petition for Warrant or Summons for Offender Under Supervision, alleging that McElroy had violated conditions of his supervised release by possessing a controlled substance, and requesting that McElroy's supervised release be revoked. The officer later filed an amended petition alleging that McElroy had a positive urinalysis result and that he denied any drug use. The urine sample was confirmed positive for cocaine by Alere Toxicology.

No. 20-50225

During the revocation hearing, the Government sought to admit a three-page exhibit comprised of the urinalysis report indicating the positive result; a chain-of-custody report showing the collection, transfer, and receipt dates of the urine specimen; and an affidavit by the records custodian at Alere Toxicology attesting that the urinalysis was conducted "according to established procedures certified and approved by the Administrative Office of the United States Courts." McElroy objected on the grounds that the urinalysis report violated his Sixth Amendment right to cross-examination, was hearsay, and was unfairly prejudicial. The district court overruled his objections but permitted a running objection.

Probation Officer Maria Ureste, who was not McElroy's probation officer, testified for the Government that she provided the confirmatory lab result. Ureste agreed on cross-examination that it was her understanding that McElroy never admitted to using cocaine and that records indicated no subsequent tests were positive. She admitted that she was not aware of, and could not glean from the urinalysis report, the facts of ingestion. Finally, she responded "no" when asked if she could tell from the urinalysis report if the cocaine was ingested passively or directly.

During closing argument, the Government argued that this court, in *United States v. Courtney*,[2] held that there is no meaningful distinction between the use and possession of a controlled substance and, thus, if the court finds use it should find possession. In response, counsel for McElroy emphasized that in *Courtney*, this court remanded for additional testimony about passive use and advised that there must be a proper record, through expert testimony, "that a positive result on tests may not reasonably be accounted for by passive inhalation" for the court to find use. In response,

---

[2] 979 F.2d 45 (5th Cir. 1992).

the district court opined that twenty-eight years after *Courtney*, "we're able not to have to go through and argue passive inhalation."

The district court found that the three violations alleged were true, revoked supervised release, and imposed a sentence of 24 months of imprisonment with no additional term of supervised release. Before the conclusion of the hearing, McElroy objected that the Government's evidence was legally and factually insufficient to support the trial court's findings. McElroy timely filed a notice of appeal.

## II

First, McElroy argues that the district court abused its discretion by admitting the report containing the positive urinalysis result despite the Government's failure to adhere to the specific procedures this court set forth in *United States v. Grandlund*[3] for the admittance of positive drug-test results in revocation proceedings. Accordingly, McElroy contends, the district court's order revoking McElroy's supervised release based on that positive urinalysis report should be vacated.

This court reviews a district court's ruling on the admissibility of evidence, as well as a district court's decision to revoke supervised release, for abuse of discretion.[4] However, because McElroy did not object in the district court to the Government's failure to adhere to the *Grandlund*

---

[3] 71 F.3d 507.

[4] *United States v. Smith*, 481 F.3d 259, 264 (5th Cir. 2007) ("This court reviews the admission of evidence for abuse of discretion." (citing *United States v. Guidry*, 406 F.3d 314, 320 (5th Cir. 2005))); *Grandlund*, 71 F.3d at 509 ("The decision to revoke supervised release is reviewed under an abuse of discretion standard . . . ." (citing *United States v. Turner*, 741 F.2d 696, 698 (5th Cir. 1984) (summary calendar))).

No. 20-50225

procedures, we review for plain error[5] using the four-pronged test.[6]  The Government correctly notes that McElroy has made no argument as to the fourth prong of plain-error review, as required for reversal.[7]  Assuming without deciding that the district court plainly erred, we decline to correct that error in this case.

## III

Next, McElroy argues that the district court improperly overruled his Sixth Amendment objection without making any findings and conclusions in the record on the issue of good cause—as required to abrogate McElroy's right to confront the lab technicians who conducted the urinalysis and ultimately admit the urinalysis report.  The Government responds that review is for plain error because McElroy's objection in the district court was not sufficiently specific to preserve this claim, and—regardless—the district court's failure to make a good cause finding was harmless error.

This court reviews alleged violations of a defendant's right to confrontation in a revocation proceeding de novo, subject to a harmless error

---

[5] *United States v. Peltier*, 505 F.3d 389, 391 (5th Cir. 2007), *abrogated on other grounds by Holguin-Hernandez v. United States*, 140 S. Ct. 762 (2020).

[6] *United States v. Bree*, 927 F.3d 856, 859 (5th Cir. 2019) ("To prevail, [the defendant] must demonstrate that (1) the district court erred, (2) the error was plain, (3) the plain error affected his substantial rights, and (4) allowing the plain error to stand would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009))).

[7] *United States v. Rivera*, 784 F.3d 1012, 1018 n.3 (5th Cir. 2015) ("We have also refused to correct plain errors when, as here, the complaining party makes no showing as to the fourth prong." (citations omitted)); *see also United States v. Andaverde-Tiñoco*, 741 F.3d 509, 523 (5th Cir. 2013) ("Importantly, the burden is on the defendant to demonstrate that the error affects the fairness, integrity, or public reputation of judicial proceedings." (citing *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012))).

analysis.[8]  However, if McElroy did not preserve the error, we review for plain error.[9]  We need not decide which standard of review applies, as McElroy cannot prevail under either.

The due process right to confrontation at a revocation hearing is "qualified."[10]  The confrontation of a particular witness may be disallowed upon "an explicit, specific finding of good cause" by the district court.[11] That is, the district court is required to make its findings and conclusions part of the record.[12]  Nevertheless, the failure to articulate a finding of good cause "may be found to be harmless error whe[n] good cause exists, its basis is found in the record, and its finding is implicit in the court's rulings."[13]

The good cause determination "requires weighing the defendant's interest in confrontation of a particular witness against the Government's proffered reasons for pretermitting the confrontation."[14]  As for McElroy's interest in confrontation, we held in *United States v. Grandlund* that the defendant's interest in confrontation of the lab technicians who conducted

---

[8] *United States v. Jimison*, 825 F.3d 260, 262 (5th Cir. 2016) (citing *United States v. Minnitt*, 617 F.3d 327, 332 (5th Cir. 2010)); *see also Grandlund*, 71 F.3d at 509 ("[T]he constitutional challenge about the right of confrontation of adverse witnesses is reviewed *de novo*." (italics in original) (citing *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995))).

[9] *United States v. Peltier*, 505 F.3d 389, 391 (5th Cir. 2007), *abrogated on other grounds by Holguin-Hernandez v. United States*, 140 S. Ct. 762 (2020).

[10] *Grandlund*, 71 F.3d at 510 (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

[11] *Jimison*, 825 F.3d at 263 (first quoting *Grandlund*, 71 F.3d at 510 n.6; and then citing *Minnitt*, 617 F.3d at 333).

[12] *Grandlund*, 71 F.3d at 512.

[13] *Id.* at 510 (first citing *McCormick*, 54 F.3d 214; and then citing *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986)).

[14] *Jimison*, 825 F.3d at 263 (brackets and internal quotation marks omitted) (quoting *Minnitt*, 617 F.3d at 333).

6

No. 20-50225

his urinalysis was "tenuous and marginal" because he offered no explanation for seven positive urinalyses over a 15-month period and because he did not deny ingesting cocaine,[15] seek retesting, subpoena lab technicians, offer evidence challenging the lab's practices or procedures, provide the questions he would have asked lab personnel, or explain how cross-examination could be of relevance.[16]  Similarly, we held in *United States v. Minnitt* that the defendant's interest in confrontation was "minimal" because the defendant had not subpoenaed the lab technician or otherwise challenged the lab results, and "the truth of the fact can best be verified through the methods of science rather than through the rigor of cross-examination."[17]

While McElroy denied the allegations of drug use when confronted with the positive urinalysis and reiterated that denial at the revocation hearing, McElroy's prior admissions to the probation office that he used crack cocaine and methamphetamine support the reliability of the positive urinalysis.[18]  Moreover, McElroy did not subpoena the lab technicians, offer independent evidence to show that the urinalysis report was not reliable, or explain how he would have assailed the credibility of the report had a lab technician testified—reducing his interest in confrontation.[19]  Further, while

---

[15] *Grandlund*, 71 F.3d at 511; *see also id.* at 510 ("In *Kindred* the government's interest in minimizing the difficulty and expense of procuring witnesses outweighed the defendant's interest, deemed minimal because he neither contested the allegations of drug use nor the accuracy of the drug test."); *United States v. Kindred*, 918 F.2d 485, 487 (5th Cir. 1990).

[16] *Grandlund*, 71 F.3d at 511.

[17] *Minnitt*, 617 F.3d at 333-34 (internal quotation marks omitted) (quoting *McCormick*, 54 F.3d at 222).

[18] *Cf. Grandlund*, 71 F.3d at 511.

[19] *Cf. United States v. Alvear*, 959 F.3d 185, 189 (5th Cir. 2020) (per curiam) (holding that a defendant's "interest is lessened when he had 'ample opportunity to refute

No. 20-50225

McElroy did otherwise contest the lab results by challenging the chain of custody and raising a false-positive defense, he did not provide supporting evidence for his theory. Consequently, it is unlikely that the theory provides a "legally-significant interest in confrontation."[20] In sum, McElroy's interest in confrontation is minimal.

In contrast, the Government's interests in "[a]voiding the delay, difficulty, and expense of securing the appearance of distant witnesses" are "substantial" and "recognized as adequate good cause."[21] Given that the testing lab for McElroy's urine sample is in Louisiana and his revocation hearing was in Texas, there is little question that the Government would have had to incur expense and delay to secure the appearance of a lab technician from Louisiana at the revocation hearing.

As in *Grandlund* and *Minnitt*, we conclude that the record supports an implicit finding of good cause, and the district court's failure to articulate its reasons for its good cause finding was harmless.

## IV

Lastly, McElroy challenges the sufficiency of the evidence to support the district court's finding that McElroy possessed cocaine in violation of his conditions of supervision. This court reviews the district court's decision to revoke supervised release for abuse of discretion.[22] We "must view the evidence and all reasonable inferences that may be drawn from the evidence

---

the Government's evidence via methods other than cross-examination'" (quoting *Minnitt*, 617 F.3d at 333-34)); *Grandlund*, 71 F.3d at 511.

[20] *Alvear*, 959 F.3d at 189 (quoting *Minnitt*, 617 F.3d at 335).

[21] *Grandlund*, 71 F.3d at 511 (citing *Gagnon v. Scarpelli*, 411 U.S. 778 (1973)).

[22] *United States v. Spraglin*, 418 F.3d 479, 480 (5th Cir. 2005) (per curiam) (citing *Grandlund*, 71 F.3d at 509).

No. 20-50225

in a light most favorable to the government."[23] The evidence is sufficient if a reasonable trier of fact could reach the district court's conclusion.[24] To revoke a term of supervised release, the district court was required to "find by a preponderance of the evidence that [McElroy] violated a condition of his release."[25] "All that [was] required [was] enough evidence, within a sound judicial discretion, to satisfy the district judge that the conduct of [McElroy had] not met the conditions of probation,"[26] i.e., to satisfy the district judge that McElroy used—and thus possessed[27]—a controlled substance.

McElroy challenges the sufficiency of the evidence on two grounds. He first argues that, if the urinalysis report had been excluded, the evidence is insufficient to support revocation because "the record contains no evidence regarding the collection of the urine specimen and whether it was performed properly." This court has explicitly held that "[m]issing links in the chain of custody go 'to the weight and not the admissibility' of evidence," and "[i]n assessing the sufficiency of evidence, we do not evaluate the weight

---

[23] *United States v. Alaniz-Alaniz*, 38 F.3d 788, 792 (5th Cir. 1994) (summary calendar) (quoting *United States v. Prieto-Tejas*, 779 F.2d 1098, 1101 (5th Cir. 1986)).

[24] *Id.* (citing *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd*, 462 U.S. 356 (1983)).

[25] *Spraglin*, 418 F.3d at 480 (citing 18 U.S.C. § 3583(e)(3)).

[26] *Id.* at 481 (quoting *United States v. Garza*, 484 F.2d 88, 89 (5th Cir. 1973) (summary calendar) (per curiam)).

[27] *See United States v. Courtney*, 979 F.2d 45, 49 (5th Cir. 1992) ("[I]n a sentencing or revocation context it is clear that 'use' requires knowing and voluntary ingestion. But once the court finds a substance has been voluntarily and knowingly ingested, then, at least in almost any imaginable circumstance, it necessarily follows that the defendant has possessed the substance.").

No. 20-50225

of the evidence or the credibility of witnesses."[28]  Thus, we need not address this argument.

McElroy—citing *United States v. Courtney*[29]—argues second that, even if the urinalysis report was properly admitted, the evidence is insufficient to support a finding that the positive urinalysis may not reasonably be accounted for by passive ingestion.  In *Courtney*, we held that—as the record stood on appeal—there was insufficient evidence to support the district court's finding that the level of cocaine metabolite on the urinalysis report could not be the result of passive inhalation.[30]  Undisputed testimony showed two positive urinalyses for cocaine, but there was no evidence regarding the significance of the confirmation level or whether the result could reasonably be the result of passive inhalation.[31]  In making its finding, the district court "merely relied, *sua sponte*, on [its] general recollection of unspecified testimony, in unidentified prior cases from unidentified witnesses," which in the revocation context was "an informality too far" and prevented this court "from meaningful exercise of its duty of review."[32]

In this case, as in *Courtney*, there was no testimony or other evidence offered explaining the significance of the level of cocaine metabolite on the urinalysis report.  However, unlike in *Courtney*, the district court relied on more than just its "general recollection of unspecified testimony, in

---

[28] *United States v. Doggins*, 633 F.3d 379, 383 (5th Cir. 2011) (first quoting *United States v. Ellis*, 547 F.2d 863, 868 (5th Cir. 1977); and then quoting *United States v. Delgado*, 256 F.3d 264, 273-74 (5th Cir. 2001)).

[29] 979 F.2d 45 (5th Cir. 1992).

[30] *Id.* at 50.

[31] *Id.*

[32] *Id.* (italics in original).

unidentified prior cases from unidentified witnesses"[33] to find that the confirmation level could not be the result of passive inhalation. The district court also relied on the testimony of Probation Officer Maria Ureste regarding the positive urinalysis,[34] as well as McElroy's admission to prior drug use and addiction[35]—which is suggestive of intentional drug use.[36]

Viewing all evidence and all reasonable inferences that may be drawn from the evidence in a light most favorable to the Government, there was enough evidence, within a sound judicial discretion, to satisfy the district judge that McElroy possessed a controlled substance in violation of the conditions of his supervision. Thus, the district court did not abuse its discretion in revoking McElroy's supervised release based on that finding.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's order revoking McElroy's supervised release.

---

[33] *Id.*

[34] *See supra* Part I.

[35] *See id.*

[36] *See Courtney*, 979 F.2d at 49 n.5 (commenting that "Courtney's prior use of the drug and his drug addiction" corroborated the positive laboratory analyses); *United States v. Bubenik*, No. 99-40153, 1999 WL 767257, at *3 (5th Cir. Sept. 8, 1999) (summary calendar) (per curiam) (holding that a defendant's prior drug use and drug addiction is evidence "suggesting intentional drug usage" (quoting *Courtney*, 979 F.2d at 49 & n.5)).