1998 ND 188

STATE of North Dakota, Plaintiff and Appellee,

v.

Lonnie VONDAL, Defendant and Appellant.

Criminal No. 980060.

Supreme Court of North Dakota.

Oct. 30, 1998.

Warren Johnson, Assistant State's Attorney, Grand Forks, for plaintiff and appellee; argued by Daniel Greiser, third-year law student.

Kipton R. Van Voorhis of Spaeth, Thelen, Van Voorhis and Jasmer, Grand Forks, for defendant and appellant.

Timothy Q. Purdon, North Dakota Trial Lawyers Association, amicus curiae; submitted on brief.

NEUMANN, Justice.

[¶ 1] Lonnie Vondal appeals from a trial court order revoking his probation. We affirm.

I

[¶ 2] On April 27, 1995, Lonnie Vondal pled guilty to the class C felony of theft of property and was sentenced to five years in the North Dakota State Penitentiary, with three years suspended. The trial court also placed Vondal on five years of supervised probation and imposed a restitution requirement. The trial court attached Vondal's conditions of probation to the judgment of conviction as Appendix "A". Vondal signed the judgment April 27, 1995, acknowledging he must comply with the conditions of probation.

[¶ 3] Vondal moved for reduction of sentence under Rule 35, N.D.R.Crim.P. On July 18, 1995, the trial court granted Vondal's motion. The order granting the motion amended the April 27, 1995, sentence by suspending all but twelve months of the five-year sentence to the penitentiary. The order also stated Vondal was to be on five years of

supervised probation conditioned on "strict compliance with each and every condition set forth in the Appendix A on file herein, a copy of which is attached hereto."

[¶ 4] Vondal was released from the state penitentiary on March 23, 1996. On March 17, 1997, following a violation of his probation, Vondal was re-sentenced in trial court. The judgment of conviction re-sentenced Vondal to the state penitentiary for five years with credit for time served, established Vondal's restitution, and terminated his supervised probation.

[¶ 5] Vondal again moved under Rule 35, N.D.R.Crim.P., for a reduction in sentence. On July 15, 1997, the trial court, while noting it was most reluctant to grant the motion, did so only because of the considerable restitution Vondal owed to the victims of his crime. The order amended the March 17, 1997, judgment, re-sentencing Vondal to five years with all but twenty-four months suspended, set the restitution payment schedule, and put him on five years supervised probation. The order also stated, "Mr. Vondal is put on notice that if he fails to strictly adhere to each and every condition set forth in the Appendix A which he executed on April 27, 1995 in this matter, he will be re-sentenced with no further favorable clemency consideration."

[¶ 6] After his release Vondal did not make any initial contact with his probation officer. Consequently, on September 22, 1997, Vondal's probation officer Jim Becker, petitioned to revoke Vondal's probation. Vondal contacted Becker by telephone on October 1, 1997. At that time, as Becker testified at the revocation hearing, Vondal was told by Becker that he was still on probation and he needed to come in and discuss his conditions of probation, where he had been living, and the petition for revocation that had been issued. Subsequently, Vondal made and canceled or failed to show up for three different appointments with Becker, and also failed to show up at the November 4 hearing on the petition to revoke his probation. Vondal was arrested on December 4, 1997, and on January 28, 1998, a hearing was held to consider the petition for revocation of probation.

[¶ 7] On February 5, 1998, an order was entered revoking Vondal's probation. Vondal was found to have violated the condition that he pay restitution and also the condition requiring him to report to the probation office within twenty four hours. The trial court sentenced Vondal to five years in the state penitentiary, with credit for 542 days served.

[¶ 8] Vondal appeals from the order revoking his probation, arguing he was not given proper notice of the conditions of his probation because he did not receive a copy of the July 15, 1997, Rule 35, N.D.R.Crim.P., reduction of sentence order.

II

A. Notice of Conditions of Probation

[¶ 9] To determine whether Vondal was given proper notice of his conditions of probation we must answer two questions. First, does N.D.C.C. § 12.1–32–07(5) allow a trial court to issue its ruling on a Rule 35, N.D.R.Crim.P., motion by mail when the defendant is being released to supervised probation. And second, does failure to receive notice of the Rule 35, N.D.R.Crim.P., order violate N.D.C.C. § 12.1–32–07(5).

[¶ 10] Notice of a defendant's conditions of probation are dealt with at N.D.C.C. § 12.1–32–07(5), where it states: *"[w]hen the court imposes a sentence* to probation, probation in conjunction with imprisonment, or probation in conjunction with suspended execution or deferred imposition of sentence, the *defendant must be given a certificate* explicitly setting forth the conditions on which the defendant is being released." (Emphasis added). To determine whether the statute is violated in this case we must first determine what "given" means.

[¶ 11] In 1973, the North Dakota Legislative Assembly passed a major revision to the state's criminal law. *See* 1973 N.D. Sess. Laws ch. 116. Section 12.1–32–07, N.D.C.C., was part of the revision. 1973 N.D. Sess. Laws ch. 116, § 31. Section 12.1–32–07(3), as passed, read "[w]hen a defendant is sentenced to probation, he shall be given a certificate explicitly setting forth the conditions on which he is being released." *Id.* This

provision became § 12.1–32–07(5) after subsequent legislative amendments. *See* 1993 N.D. Sess. Laws ch. 130, § 1; 1989 N.D. Sess. Laws ch. 158, § 4.

[¶ 12] Title 12.1 was modeled after the proposed Federal Criminal Code revision. *See State v. Rambousek*, 479 N.W.2d 832, 834 (N.D.1992); *State v. Bourbeau*, 250 N.W.2d 259, 264 (N.D.1977). In 1970, the National Commission on Reform of Federal Criminal Laws submitted a report on the proposed Federal Code revision to Congress. Section 3103 of the proposed Federal Criminal Code provided "[w]hen a defendant is sentenced to probation, he shall be given a certificate explicitly setting forth the conditions on which he is being released." National Commission on Reform of Federal Criminal Laws, *Final Report, Proposed New Federal Criminal Code* § 3103 (1971). This is the same language our state adopted in 1973. 1973 N.D. Sess. Laws ch. 116, § 31.

[¶ 13] In 1984, after a decade and a half, the federal code revision was passed and signed into law. *1984 Congressional Quarterly Almanac* 215. The provision dealing with the certificate of conditions of probation was codified at 18 U.S.C. § 3563(d), and it provided:

> *Written Statement of Conditions.*—The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the sentence is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

Although the language has changed since the 1970 version of the federal code, the intent of the provision remains the same, to give a defendant notice of the conditions of his probation in a clear and specific way. *See, e.g., United States v. Johnson*, 763 F.Supp. 900, 902 (W.D.Tex.1991) (holding it is harmless error to not comply with giving defendant statement of conditions of release when defendant has specifically been told of the condition violated).

[¶ 14] The legislative history of § 3563(d) indicates this type of provision was new to federal law, and the statement or certificate "should be required both as a matter of fairness and as a matter of efficient program administration." S.Rep. No. 98–225, at 100 (1984), *reprinted in* United States Code Congressional and Administrative News (U.S.C.C.A.N.) 3182, 3283. However, the legislative history also shows the Senate Committee felt any error in the statement or even a failure to supply the statement should not necessarily be a reason to impugn the validity of a revocation of probation for a violation of one of the conditions, because the conditions, in any event, would have been stated in court. *Id.* at n. 220.

[¶ 15] This construction of § 3563(d) has been followed by the federal courts. In *Johnson*, a federal court interpreted 18 U.S.C. § 3583(f), which deals with supervised release rather than probation and restates the same language used in § 3563(d). *Johnson*, 763 F.Supp. at 901. In that case, the defendant had not received a written copy of the conditions of his release, nor was there any evidence the clerk of court had mailed the defendant a copy of the judgment and sentence. *Id.* at 903. However, it was established beyond a doubt that the court had orally advised the defendant of the condition the defendant in fact violated. *Id.* at 904. The court, citing the above stated legislative history of § 3563(d), found the violation of § 3583(f) to be harmless error when the court had orally advised the defendant of the condition he later violated. *Id.* at 902. *See also United States v. Felix*, 994 F.2d 550 (8th Cir.1993) (holding the defendant had adequate notice of the condition of his supervised release that he not commit any crime, notwithstanding the fact the defendant had not received any written copy of the condition or a copy of the judgment and sentence).

[¶ 16] We now consider whether N.D.C.C. § 12.1–32–07(5) and its requirements allow a court to issue a Rule 35, N.D.R.Crim.P., order by mail, releasing a defendant to probation imposed at the original sentencing. While the federal legislative history is enlightening, it is not controlling. *See State v. Bower*, 442 N.W.2d 438, 440 (N.D.1989) (noting that when interpreting a statute in Title 12.1 we can look to the comments of the proposed Federal Criminal Code and relevant legislative history for

guidance). Under a plain reading of subsection (5), the court must give the defendant a written copy of the conditions of probation when the defendant is sentenced. However, in light of the federal legislative history, we determine in the unique context of this case, in which a defendant is being released, under a Rule 35, N.D.R.Crim.P., motion, to probation on the same conditions as originally imposed, no violation of N.D.C.C. § 12–32.1–07(5) occurs when such an order on the Rule 35, N.D.R.Crim.P., motion is sent by mail.

[¶ 17] This determination is predicated on the record's clear showing Vondal had been given clear and specific notice of his conditions of probation at every step in the criminal process. First, Vondal received the written conditions of his probation when he was initially sentenced at the trial court. Second, the order granting Vondal's initial Rule 35, N.D.R.Crim.P., motion and returning him to probation specifically referenced those same conditions of probation, and a copy of them was attached to the order. And finally, the order granting Vondal's second Rule 35, N.D.R.Crim.P., motion, which once again released him to probation, specifically mentioned the conditions of probation he had received at his original sentencing, and stated if he were to violate any of those conditions again the trial court would re-sentence him with no favorable clemency. Based on these specific facts, we hold the requirements of N.D.C.C. § 12.1–32–07(5) have been met. The trial court complied with the statute at sentencing, and at every subsequent stage Vondal received specific and clear reference to the conditions of probation.

[¶ 18] We also find this holding consistent with our line of cases in which we held that conditions of probation must be announced by the court and not delegated to other agencies or people. *See, e.g., State v. Nelson,* 417 N.W.2d 814 (N.D.1987) (holding that because of the importance and complexity of sentencing decisions the trial court must determine and impose the sentence on the defendant); *State v. Saavedra,* 406 N.W.2d 667 (N.D.1987) (holding the determination of the conditions of probation cannot be delegated to a probation officer).

[¶ 19] A question exists as to whether Vondal actually received the second Rule 35, N.D.R.Crim.P., order. The record shows the trial court mailed the Rule 35 order to Vondal care of the Devils Lake Correctional Facility. The postal service did not return the letter to the trial court. However, Vondal asserts he did not receive a copy of the Rule 35 order. Assuming for purposes of discussion Vondal did not receive the order, we will address whether failure to receive notice of the court's Rule 35 order violates N.D.C.C. § 12.1–32–07(5).

[¶ 20] Rule 49, N.D.R.Crim.P., relates to service and filing of papers. In this instance, subsection (c), "Notice of Orders," controls because the trial court had granted Vondal's Rule 35 motion. Subsection (c) states:

Immediately upon the entry of an order made on a written motion subsequent to arraignment the clerk shall mail to or otherwise serve on each party affected thereby a notice thereof and note the service in the docket. Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted by Rule 37(b) of these Rules and Rule 4(b) of the N.D.R.App.P.

[¶ 21] Assuming Vondal did not receive a copy of the second Rule 35 order, under the facts of this case, Vondal still had actual notice of the conditions of his release.

[¶ 22] The record indicates Vondal had knowledge as to the conditions of his release. First, Vondal called his probation officer on October 1, 1997, after he had been released on the Rule 35 order. Second, the record shows Vondal knew he had to make restitution payments of $150 beginning thirty days after his release, as specified in the Rule 35 order. Furthermore, at the revocation hearing, Becker testified that when Vondal called him on October 1, Becker advised Vondal that he was still on probation and that he needed to come in and discuss the conditions of his probation, where he had been living, and the petition for revocation pending due to his delay in contacting Becker. Becker testified Vondal failed to appear on three different occasions after that October 1

phone call. Vondal also failed to appear at the November 4, 1997, revocation hearing, of which Becker had orally informed Vondal during the October 1, phone call. Even assuming Vondal did not know he was on probation prior to the October 1 phone call, there can be no question that after the discussion with Becker, Vondal unequivocally knew he was on probation and knew he was to report to Becker.

[¶ 23] While it is apparent Vondal had actual notice of the conditions of his release under the Rule 35 order, we also note a violation of N.D.R.Crim.P. 49(c) does not in and of itself establish a substantive impairment of an individual's rights great enough to justify invalidating a revocation of probation. The Advisory Committee to F.R.Crim.P. 49(c) noted, "[n]o consequence attaches to the failure of the clerk to give the prescribed notice." *See* 3A *Charles Alan Wright, Federal Practice and Procedure* § 823 (1982). Generally, a failure by the clerk of court to give notice could affect a person's ability to timely file an appeal under the Rules of Appellate Procedure. However, even in that instance, a court will not allow a failure by the clerk to give notice of entry of an order or judgment to toll or extend the time period for an appeal to be filed. *See United States v. Green*, 89 F.3d 657, 660–61 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 408, 136 L.Ed.2d 321 (1996)(stating "[w]e are aware that the application of Fed. R.App.P. 4(b), in conjunction with Fed. R.Crim.P. 49(c), can be harsh to a criminal defendant"). In this case, an impairment has not been suffered by Vondal's lack of notice under N.D.R.Crim.P. 49(c). Vondal had actual notice of the conditions of the order. During the October 1 phone conversation with Becker, Vondal was explicitly told he was on probation and needed to come and see Becker, a directive Vondal chose to ignore. Therefore, considering Vondal's actual notice of the order and the intent behind Rule 49(c), we believe it harmless error if, in fact, Vondal did not receive a copy of his Rule 35 order.

[¶ 24] Our holding today is based strictly on the facts presented here. District courts, as well as correctional facilities in this state, would be well advised to ensure a defendant receives any court-issued document mailed to the defendant, and also to ensure documentation of the receipt.

B. The *State v. Lewis* Doctrine

[¶ 25] The issue of the continued viability of the *Lewis* doctrine was also raised in this appeal.

[¶ 26] In 1967, the Supreme Court, in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), addressed the issue of the duty of a court-appointed attorney to pursue a criminal appeal after that attorney had determined an appeal would be without merit. *Id.* at 739, 87 S.Ct. 1396. The Supreme Court noted:

The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.... [T]he court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires.

*Id.* at 744, 87 S.Ct. 1396.

[¶ 27] In 1980, this Court addressed *Anders* and its relation to our constitution. *State v. Lewis*, 291 N.W.2d 735 (N.D.1980). In *Lewis*, we noted Section 90 of the North Dakota Constitution provided for appeals to the Supreme Court as may be provided by

law. *Id.* at 737. We further noted N.D.C.C. § 29–28–03 provided appeals under N.D.C.C. ch. 29–28 are a matter of right, and that N.D.C.C. § 29–28–06 provided a specific listing of what may be appealed from. *Id.* at 737–38. We determined under North Dakota procedure, "the defendant has a right to appeal as a matter of law and counsel is appointed upon request for the appeal." *Id.* at 738. Reasoning that to adopt *Anders* would violate Section 90 and the corresponding statutory provisions, and that defendants in North Dakota enjoy more protection than *Anders* supplies, we declined to adopt the *Anders* procedure. *Id.*

[¶ 28] Instead, we held the proper procedure to be followed in this state when a court-appointed counsel believes an appeal to be without merit is to appoint another counsel to represent the defendant on appeal. *Id.* We noted that conceivably, under this procedure, there may come a time when counsel must represent the defendant to the best of counsel's ability notwithstanding the fact that the attorney believes the appeal is without merit. *Id.*

[¶ 29] Under the *Lewis* procedure, a defendant has a right to legal counsel at all stages of the appeal. This is the very heart of the doctrine and the contrary, a defendant having to appeal his case pro se because court-appointed counsel informed the trial court the appeal is without merit, as was temporarily the case in this appeal, is repugnant to our state constitution and laws.[1] Under *Lewis,* if court-appointed counsel believes an appeal is without merit the trial court must appoint another attorney to handle the appeal, with the knowledge that in some instances an attorney may have to appeal a case he or she feels is without merit. In

such an instance, court-appointed counsel must fulfill the ethical duty to the client and pursue an appeal with full diligence.[2]

### III

[¶ 30] We hold Vondal received proper notice of his conditions of probation under N.D.C.C. § 12.1–32–07(5) and N.D.R.Crim.P. 35. Finding *Lewis* to be the appropriate doctrine for our state, we affirm this procedure as it was outlined in *Lewis.* The judgment of the trial court is affirmed.

[¶ 31] VANDE WALLE, C.J., and MARING and SANDSTROM, JJ., concur.

[¶ 32] Because of the vacancy on the Court at the time of hearing and decision, this case was decided by four Justices.

---

**1.** Originally, Vondal's court-appointed attorney felt any appeal would be without merit. The trial court then appointed another attorney who also determined any appeal would be without merit. The trial court then instructed the second appointed attorney to file a notice of appeal and then consider themselves dismissed. We received the notice of appeal and remanded to the trial court with instruction that an attorney be appointed to represent Vondal on appeal.

**2.** It is unlikely, an attorney who is acting under *Lewis,* will violate Rule 3.1, N.D.R. Prof. Con-

duct. The comment notes an attorney who signs a legal document which is not well grounded in fact and is not warranted by existing law, or a good-faith argument for the extension, modification, or reversal of existing law has "misused the legal system and its procedures and has acted unprofessionally." Under *Lewis,* an attorney who is fulfilling a duty which stems from the North Dakota Constitution and is acting in accordance with the North Dakota Constitution, has not misused the legal system or acted unprofessionally.