2004 ND 75

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Dana CAUSER, Defendant and Appellant.**

**No. 20030124.**

Supreme Court of North Dakota.

April 13, 2004.

554

Dana Causer, pro se, defendant and appellant.

Lonnie Olson, State's Attorney, Devils Lake, for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1]   Dana Causer appeals from the trial court's order revoking his probation and resentencing him.   We conclude the trial court did not err in revoking Causer's probation or in sentencing him to a term of imprisonment exceeding the original sentence.   We affirm.

I

[¶ 2]   On May 16, 1995, Causer pled guilty to gross sexual imposition after allegedly making a seven-year-old victim, A.B., perform oral sex on him.   The trial court sentenced Causer to ten years' imprisonment, with four years suspended if Causer abided by the trial court's conditions of probation during the four-year suspended period.   On July 3, 1999, Causer was released from the state penitentiary and placed on supervised probation, under conditions of probation imposed by the trial court.   Among other conditions, Causer was prohibited from contacting A.B. and her mother, possessing dangerous weapons, drinking excessive amounts of alcohol, and violating any criminal laws or ordinances.   In addition, Causer's probation required he submit to a search of his person, vehicle or residence by his probation officer at any time, regardless of whether the probation officer had a search warrant.   Causer was required to submit to any drug or alcohol testing requested by his probation officer.

[¶ 3]   After his release, the trial court revoked Causer's probation on four separate occasions.   Based on the first three revocations, Causer's conditions of probation were expanded.   In addition to the original conditions, Causer was required to immediately enroll in and successfully

complete sex offender treatment, maintain complete sobriety from alcohol and drugs, be subject to random drug and alcohol testing, maintain no further contact with an ex-girlfriend known as T.L., and obtain daily urinalysis tests. Additional conditions were also imposed. The trial court also extended Causer's probation by one year, to July 3, 2004.

[¶ 4] Causer enrolled in a sex offender treatment program with Dr. Myron J. Veenstra of the Northeast Human Service Center in Grand Forks, North Dakota. Causer signed a sex offender treatment contract with the center containing a clause acknowledging he could be dismissed from the program if he engaged in "targeted sexual activity."

[¶ 5] The following events led to Causer's fourth and final probation revocation. On January 31, 2003, Causer's probation officer, Lila Thomas visited Causer's home. Causer lived alone. Thomas believed Causer should have expected her visit because she had told him she would be visiting before the end of January. Thomas knocked on Causer's door repeatedly, calling his name and asking him to step outside. Two uniformed police officers and two Bureau of Criminal Investigation agents, not in uniform, accompanied Thomas. Causer did not answer the door. Thomas and law enforcement entered the home. Thomas asserts she and law enforcement continued to call out for Causer while searching inside the home. Causer was discovered hiding in the attic.

[¶ 6] According to Causer, he was sleeping when Thomas arrived and was awakened by a loud pounding on his door. Causer glanced out his window and saw a man who was not in uniform standing outside his door with a gun. Allegedly, Causer did not know Thomas was present. Causer asserts he then hid in his attic and did not hear anything until the officers entered the attic.

[¶ 7] Thomas and the officers searched Causer's home. They found full beer bottles in the attic, beer bottle caps in the home, and empty beer cans in the garbage. Causer denied knowing there was beer in the attic and explained the beer cans and bottle tops were from a Super Bowl party. At Causer's revocation hearing, Paul Riemer testified he had placed beer in Causer's attic while housesitting and had forgotten about it.

[¶ 8] Thomas also found and seized a bow, arrows, a pocketknife, and two boxcutters, items she identified as dangerous weapons. According to Causer and his mother, the bow and arrows belonged to Causer's nine-year-old son and was a child's toy, including only practice arrows.

[¶ 9] Thomas discovered pornographic tapes, pornographic magazines, sex toys, female clothing, and Causer's own artwork depicting sexual acts. Causer claimed the items were locked away in his home because he was not using them and, when his son visited, the items were completely removed from his house. Riemer also testified he had stored the items for Causer when Causer's son visited. Causer also stated he drew the artwork while in Bismarck, presumably while in prison.

[¶ 10] During the search, Thomas found an antibiotic prescription for T.L.'s child in Causer's refrigerator. The prescription was dated January 18, 2003. A restraining order prohibiting contact between Causer and T.L. was in effect from July 9, 2002, to July 8, 2003. Causer explained that T.L.'s mother had called Causer and asked him to pick up the prescription. According to Causer, he picked up the prescription, but it was never retrieved from his home.

[¶ 11] In a letter dated February 4, 2003, Dr. Veenstra notified Thomas that Causer was discharged from the sex offender treatment program because his lapse in behavior indicated he was unable to be treated in a community-based treatment program. Dr. Veenstra determined Causer had a lapse in behavior based on the pornographic items discovered during the January 31, 2003, search of his home. According to Thomas, Causer was discharged from the program for violating his contract with the center.

[¶ 12] On March 11, 2003, Thomas subjected Causer to a urinalysis. The sample tested positive for amphetamines. Thomas sent the sample to a laboratory, which confirmed the presence of amphetamines and also showed the presence of methamphetamine. Causer denied using methamphetamine, explaining the positive drug test could have resulted from Sudafed he had taken for a sinus cold.

[¶ 13] Thomas moved for probation revocation on March 19, 2003, alleging six violations of Causer's probation. The trial court held a probation revocation hearing on April 11, 2003, and subsequently revoked Causer's probation. In its order the trial court found, by a preponderance of the evidence, that Causer had committed all six of the alleged violations of the probation conditions. The trial court found Causer violated his probation by refusing to answer the door during the probation officer's January 31, 2003, visit; Causer violated his probation by possessing T.L.'s child's prescription, concluding that possession violated the July 9, 2002, restraining order; Causer violated the conditions of his probation by possessing alcohol and dangerous weapons; Causer violated the conditions of his probation by testing positive for amphetamine TLC and methamphetamine; and Causer violated the conditions of his probation because he was discharged from a sex offender treatment program.

[¶ 14] The trial court sentenced Causer to thirteen years and fifty-two days' imprisonment, with credit for six years and fifty-two days for time served. The trial court ordered Causer to complete sex offender treatment and ordered Causer to be placed on three years of supervised probation upon his release from prison. Causer appeals.

II

[¶ 15] Causer argues he was not given proper notice of the revocation proceedings in violation of his right to due process. According to Causer, his court-appointed attorney notified him of the revocation proceedings on March 20, 2003, the day of the revocation hearing. For reasons not shown in this record, the hearing was rescheduled for April 11, 2003. Causer claims he was not aware of the State's allegations until the April hearing.

[¶ 16] Rule 32(f)(2)(B), North Dakota Rules of Criminal Procedure, requires the State to provide a probationer with "a prior written notice of the alleged violation" when a probation revocation hearing is conducted. Causer correctly asserts he should have been given notice of the alleged violations, as required under North Dakota rules of procedure. However, Causer failed to preserve this issue for appeal. A review of the record shows Causer did not object to the State's failure to provide notice.

One of the touchstones for an effective appeal on any proper issue is that the issue was appropriately raised at trial so the trial court could intelligently rule on it. This Court will not consider questions that were not presented to the trial court and are raised for the first time on appeal.

*City of Fargo v. Roberson,* 2001 ND 204, ¶ 5, 636 N.W.2d 926 (citations omitted). When an issue is not preserved for appeal, we may provide limited review of the issue to determine whether obvious error affecting substantial rights has been committed. Rule 52(b), N.D.R.Crim.P. (providing, "[o]bvious errors ... may be noticed although they were not brought to the attention of the court"); *see State v. Lemons,* 2004 ND 44, ¶ 15, 675 N.W.2d 148. The defendant must show "(1) error, (2) that is plain, and (3) affects substantial rights." *Lemons,* at ¶ 15. A substantial right is not affected unless the obvious error was prejudicial to the defendant or affected the outcome of the case. *Id.* On appeal, we review the entire record to determine the existence of the alleged obvious error and its probable effect in light of all the evidence. *Id.*

[¶ 17] Causer admitted his attorney notified him of the revocation proceedings. The notice was provided March 20, 2003, the morning of the scheduled hearing. The trial court granted a continuance, rescheduling the hearing for April 11, 2003. The reason for the continuance does not appear in the record. Causer had three weeks to prepare for his hearing after receiving actual notice of the revocation proceedings on March 20, 2003. The record shows Causer was able to secure witnesses and arrange for his own appearance. Even if Causer was unaware of the State's grounds for revocation of his probation, he had ample opportunity to apprise himself of the information. Causer, through his attorney, defended each of the charges at the hearing and produced witnesses who testified on his behalf. Causer has not shown the State's failure to provide notice affected the outcome of his case or prejudiced him in any other way. Causer has failed to demonstrate his substantial rights were affected.

## III

[¶ 18] Causer argues he received ineffective assistance of counsel because his attorney (1) advised him to appear at his revocation hearing even though he had not been properly notified; (2) was unprepared for the revocation hearing; (3) failed to put the State's case through a meaningful adversarial testing; (4) failed to move to suppress evidence on grounds of an illegal entry into Causer's home; and (5) failed to raise other issues Causer raised on appeal.

[¶ 19] "To establish an ineffective assistance of counsel claim, the defendant must show the representation fell below an objective standard of reasonableness and there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Roberson,* 1998 ND App 15, ¶ 9, 586 N.W.2d 687. Generally, ineffective assistance of counsel claims should be raised in post-conviction proceedings, during which an evidentiary record can be made. *Id.* However, we examine the entire record when an ineffective assistance of counsel claim is raised on direct appeal. *Id.* A conviction will not be reversed unless the record reveals the assistance of counsel was plainly defective and requires such reversal. *Id.*

> Unless the record affirmatively shows ineffectiveness of constitutional dimensions, the defendant must provide the court with some evidence in the record to support the claim. Some form of proof is required, and the representations and assertions of new counsel are not enough.... [W]ithout a record scrutinizing the reasons underlying counsel's conduct, adjudging it subpar is virtually impossible.

*Id.* (citations omitted). If the defendant fails to sustain an ineffective assistance of

counsel claim on direct appeal, the issue may be raised later in a post-conviction proceeding. *Id.*

[¶ 20] An examination of the entire record fails to show Causer's attorney was ineffective. The record shows Causer's attorney actively participated in the revocation hearing and there was no indication she was unprepared. She cross-examined the State's witnesses and presented two witnesses on Causer's behalf. There is no proof in the record to support Causer's other assertions of ineffectiveness.

## IV

[¶ 21] Causer argues the trial court failed to inform him of his right to appeal the probation revocation. Causer also argues he was denied his right to counsel on appeal.

[¶ 22] There is no federal constitutional right to appeal a state criminal conviction. *State v. Bell,* 2000 ND 58, ¶ 17, 608 N.W.2d 232, nor does the North Dakota Constitution grant a right to appeal. *State v. Fischer,* 270 N.W.2d 345, 350 (N.D.1978). Because there is no constitutional right to appeal, there is no constitutional right to be notified of a right to appeal.

[¶ 23] A defendant has a statutory right to appeal. Section 29–28–06 of the North Dakota Century Code provides statutory authority for this right and specifies the various orders and judgments from which a defendant may appeal. *See State v. Moore,* 2003 ND 83, ¶ 4, 662 N.W.2d 263, *cert. denied, Moore v. North Dakota,* —— U.S. ——, 124 S.Ct. 268, 157 L.Ed.2d 192 (2003). The defendant's statutory right of appeal includes the right to appeal from an order revoking probation. *See* N.D.C.C. §§ 29–28–03 and 29–28–06; *State v. Vondal,* 1998 ND 188, ¶¶ 27, 29, 585 N.W.2d 129.

[¶ 24] There is no statutory or procedural requirement that a defendant be notified of his right to appeal a revocation of probation. Rule 32(f) of the North Dakota Rules of Criminal Procedure governs revocation of probation. Under Rule 32(f), the trial court is not obligated to advise a defendant of his right to appeal from the revocation. *State v. Jones,* 2002 ND 163, ¶ 7, 652 N.W.2d 369. Causer was not entitled to notice of his right to appeal and the trial court did not err by failing to provide such notice. Further, Causer's appeal was timely filed and he was not harmed by the trial court's alleged error.

[¶ 25] Causer's constitutional right to counsel does not attach in an appellate proceeding because there is no federal or state constitutional right to appeal. Therefore, Causer's constitutional right to counsel was not violated when the trial court neither informed him of his right to counsel nor appointed Causer counsel on appeal.

[¶ 26] Under North Dakota law, a defendant has a non-constitutional right to counsel at all stages of an appeal. *State v. Vondal,* 1998 ND 188, ¶ 29, 585 N.W.2d 129. North Dakota law also provides that such "counsel is appointed upon request." *Id.* at ¶ 27. Causer failed to request court-appointed counsel on appeal. There is no legal authority excusing Causer's failure to make that request. In *Jones,* we concluded the trial court was under no duty to notify the defendant of his right to appeal because Rule 32(f), N.D.R.Crim.P., was silent on the matter. 2002 ND 163, ¶ 7, 652 N.W.2d 369. Here, we reach the same conclusion with regard to the appointment of counsel. Rule 32(f), N.D.R.Crim.P., does not provide a probationer with the right to counsel on appeal, nor does it state the trial court has a duty to inform the defendant of such a right. A

trial court cannot be required to notify a defendant of the right to counsel on appeal if the trial court is not obligated to notify a defendant of the right to appeal. The trial court did not err in failing to notify Causer of his right to counsel on appeal, nor did it err in failing to appoint counsel sua sponte.

## V

[¶ 27] Causer argues the trial court erred in revoking his probation by finding (1) he was in possession of alcohol; (2) he lapsed in his court-ordered treatment; (3) he had tested positive for methamphetamine; (4) he was in possession of dangerous weapons; (5) he had refused to answer the door when the probation officer and law enforcement arrived on January 31, 2003; and (6) he violated a restraining order.

[¶ 28] A trial court has broad discretion to impose conditions of probation. *State v. Bender*, 1998 ND 72, ¶ 9, 576 N.W.2d 210; *see* N.D.C.C. § 12.1–32–07. Section 12.1–32–07, N.D.C.C., is not exclusive; the trial court retains the discretion to impose conditions it deems appropriate considering the facts and circumstances of a particular case. *Bender*, at ¶ 9. The only statutory limitation placed upon the trial court's authority to impose probation is that the conditions be "reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist the defendant to do so." N.D.C.C. § 12.1–32–07(2); *Bender*, at ¶ 10. If a condition of probation is violated,

> [T]he court may continue the defendant on the existing probation, with or without modifying or enlarging the conditions, or may revoke the probation and impose any other sentence that was available under section 12.1–32–02 or 12.1–32–09 at the time of initial sentencing or deferment.

N.D.C.C. § 12.1–32–07(6). Various sentencing alternatives are available to the trial court under N.D.C.C. § 12.1–32–02.

[¶ 29] "On probable cause to believe a probationer has violated a condition of probation," the trial court may order the probationer to appear at a hearing on the matter. N.D.R.Crim.P. 32(f)(1). If the probationer contests the violation, the State must prove by a preponderance of the evidence that the probationer violated the terms of his probation. *State v. Drader*, 432 N.W.2d 553, 554 (N.D.1988); N.D.R.Crim.P. 32(f)(2). If the trial court establishes a violation of probation, the trial court "may revoke an order suspending a sentence or an order suspending the imposition of sentence, or continue probation on the same or different conditions, as the circumstances warrant." N.D.R.Crim.P. 32(f)(2).

[¶ 30] On appeal from a probation revocation, this Court applies a two-step analysis, first reviewing the trial court's factual findings, and then reviewing the trial court's decision to revoke probation, based on those factual findings. *See State v. Olson*, 2003 ND 23, ¶ 15, 656 N.W.2d 650.

[¶ 31] Under the first step of our analysis, we review the trial court's factual finding of a probation violation under the clearly erroneous standard. "A finding of fact is clearly erroneous if, although there may be some evidence to support it, the reviewing court on the entire evidence, is left with a definite and firm conviction a mistake has been made." *State v. Ballweg*, 2003 ND 153, ¶ 14, 670 N.W.2d 490. When reviewing the trial court's findings of fact, we recognize the trial court determines the credibility of witnesses. *State v. Toepke*, 485 N.W.2d 792, 795 (N.D.1992). "On review, we do not substitute our judgment for the trial court when there is testimony to support its findings." *Id.* at 795.

[¶ 32] Under the second step of our analysis, we apply the abuse of discretion standard to review the trial court's determination that revocation of probation was warranted. *Olson*, 2003 ND 23, ¶ 15, 656 N.W.2d 650. "A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law." *State v. Clark*, 2001 ND 194, ¶ 8, 636 N.W.2d 660.

## A

[¶ 33] Causer argues the trial court erred in revoking his probation for allegedly possessing alcohol.

[¶ 34] The State presented the trial court with evidence and testimony establishing the presence of alcohol in Causer's home during the January 31, 2003, search. Thomas testified she and the officers found six or seven unopened bottles of beer in Causer's attic. Thomas also testified she found beer bottle caps in the living area of Causer's home and found empty beer cans in Causer's garbage. Causer lived alone. Causer asserts he refuted the State's assertion that he was in possession of alcohol because Riemer testified the unopened bottles belonged to him, and Causer explained the presence of the beer cans and beer bottle caps by testifying he had a Super Bowl party one week earlier. The trial court did not believe Causer was unaware of the presence of the alcohol and found that, by having a party with alcohol present in his home, Causer was in possession of alcohol.

[¶ 35] "The task of weighing the evidence and judging the credibility of witnesses belongs to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence." *McKechnie v. Berg*, 2003 ND 136, ¶ 19, 667 N.W.2d 628. Based on the evidence and testimony presented, the trial court's finding that Cau-

ser was in possession of alcohol was not clearly erroneous. There is evidence to support the trial court's finding, and a review of the evidence does not leave us with an indication, much less a firm conviction, that a mistake has been made.

[¶ 36] Causer also argues the trial court's revocation of probation based on his alleged possession of alcohol violates the principle and purpose of probation. According to Causer, probation is a "test to see if a probationer will not go back to his criminal activity . . . a sex offense against a female. Probation is a test to see if the probationer can associate and intermingle in society. . . ." Causer seemingly argues, by having a party and "intermingl[ing] responsibly," he was fulfilling a purpose of probation. Apparently, because his probation is related to a sex offense, not an alcohol offense, he asserts the trial court unfairly revoked his probation for possession of alcohol.

[¶ 37] The trial court did not abuse its discretion by revoking Causer's probation for possessing alcohol. Causer's probation was revoked on two prior occasions for use of drugs and alcohol. The trial court's prohibition against alcohol was imposed as part of Causer's second probation revocation. The conditions imposed as part of that revocation were based, in part, on recommendations from Dr. Veenstra. Dr. Veenstra recommended Causer maintain total sobriety from alcohol and drugs. In a July 8, 2002, letter, Dr. Veenstra asserted, "Mr. Causer has always said that it was in these times of extreme intoxication that he sexually offended." During the final revocation hearing, Thomas testified Causer is at high risk of committing another sex offense if he uses chemicals, including alcohol. This clearly contradicts Causer's contention that his prohibition from alcohol is unrelated to his offense. Based on the record, the trial

court did not abuse its discretion in revoking Causer's probation based on its finding that Causer possessed alcohol.

[¶ 38] Alternatively, Causer argues the evidence of alcohol should be suppressed as illegally-obtained evidence because he did not give Thomas permission to enter his home. We will not address this issue because Causer failed to raise it before the trial court. *See Roberson*, 2001 ND 204, ¶ 5, 636 N.W.2d 926.

[¶ 39] We affirm the trial court's revocation based on Causer's possession of alcohol.

B

[¶ 40] Causer argues the trial court erred in revoking his probation for a lapse in court-ordered treatment.

[¶ 41] The State alleged Causer violated his probation because he was discharged from his sex offender treatment due to a lapse in behavior. Under the conditions of Causer's probation, he was required to enroll in and successfully complete sex offender treatment. The trial court found Causer was discharged without completing the program. There is testimony supporting the finding, and Causer does not contest that he was discharged from treatment. Although unnecessary to determine whether a probation violation was committed, the trial court found revocation was caused by Causer's lapse in behavior. This finding, too, is not clearly erroneous. At the revocation hearing, Causer admitted, "I did slip; you know; I did relapse."

[¶ 42] The trial court did not abuse its discretion in determining Causer's discharge from treatment warranted a revocation of his probation. Causer argues he is in need of further treatment, not incarceration. The trial court found revocation was warranted because Causer had failed to complete his treatment by the time of the final revocation hearing, despite the fact that treatment had been ordered on August 5, 2002. Dr. Veenstra's February 4, 2003, discharge letter noted that Causer's lapse in behavior indicated he was unable to be treated in a community-based treatment program. The trial court also recognized that Causer had previously broken his treatment contract and the court believed Causer's failure to complete treatment was a safety concern. The trial court noted it had given Causer an opportunity to complete treatment without being incarcerated and now had no other option but to incarcerate him. Based on Causer's treatment history and record of probation violations, the trial court did not abuse its discretion in determining revocation was appropriate.

[¶ 43] We affirm the trial court's revocation based on Causer's lapse in court-ordered treatment.

C

[¶ 44] Causer argues the trial court erred in finding he tested positive for methamphetamine because the State failed to prove he tested positive. According to Causer, the trial court found "we do ... have the lab report indicating that [Causer] did test positive for amphetamine and, therefore, that is a violation," but did not make the same finding regarding methamphetamine. Causer argues the trial court's decision is insufficient. Causer's argument is without merit.

[¶ 45] The State alleged Causer tested positive for amphetamine on March 11, 2003, and a laboratory test confirmed the presence of methamphetamine and amphetamine TLC. Causer's probation conditions required he not violate any criminal laws, that he refrain from consuming any controlled substances, and that he maintain complete sobriety.

[¶ 46] Causer's argument is based on the trial court's oral statements made at the end of the revocation hearing on April 11, 2003. However, the trial court's April 15, 2003, written revocation order states that the trial court found by a preponderance of the evidence that Causer had violated his probation by testing positive for "amphetamines TLC and methamphetamine." The trial court's oral finding is superseded by the written order. "A trial court's written findings of fact prevail when a discrepancy exists between those findings and the court's prior memorandum opinion or oral ruling." *Fenske v. Fenske*, 542 N.W.2d 98, 102 (N.D.1996). The trial court found the State proved by a preponderance of the evidence that Causer tested positive for methamphetamine.

[¶ 47] The trial court's finding was not clearly erroneous. The trial court heard testimony regarding the testing procedures and results. The trial court also heard Causer's testimony that the test results were positive for methamphetamine because he had taken an over-the-counter medication, Sudafed, rather than methamphetamine. As we have already stated, the trial court is in the best position to judge the credibility of witnesses, and we will not make such determinations. *McKechnie v. Berg*, 2003 ND 136, ¶ 19, 667 N.W.2d 628. The trial court did not believe Causer's testimony. Based on the evidence, the trial court did not err in finding Causer tested positive for methamphetamine.

[¶ 48] Causer did not challenge the appropriateness of revocation, based on the trial court's finding that he tested positive for methamphetamine. Therefore, we do not determine whether the trial court abused its discretion in revoking Causer's probation based on that violation.

[¶ 49] We affirm the trial court's revocation based on Causer's positive test for methamphetamine.

D

[¶ 50] Causer argues the trial court erred in finding he was in possession of dangerous weapons, because the so-called "dangerous weapons" clause of the conditions of his probation is overbroad. Causer further argues the trial court erroneously found Causer had a duty to inquire into which weapons were dangerous because the State had a duty to notify him of the definition of "dangerous weapons," under the terms of his probation.

[¶ 51] The State alleged Causer was in possession of dangerous weapons during the January 31, 2003, search. The dangerous weapons he allegedly possessed were a bow, arrows, two boxcutters, and a pocketknife. The trial court found Causer violated the conditions of his probation by having these items in his residence. The trial court also found that, if Causer was unaware of which objects were considered weapons, he should have inquired whether the items in his home were considered dangerous weapons.

[¶ 52] Causer argues the overbroad terms of the "dangerous weapons" clause could mean "any solid object, which can be wielded with one or both hands, is a dangerous weapon." Causer exaggerates the issue. The trial court did not find that any solid object, such as Causer's example of a pillow, baseball bat, or an individual's own hands and feet, constituted a dangerous weapon in violation of his probation. The trial court found that a pocketknife, boxcutters, bow, and arrows were dangerous weapons.

[¶ 53] The trial court heard testimony as to the nature of these items and was able to observe these items. The trial court rejected the notion that Causer's "dangerous weapons" clause was overbroad, as applied to the items found in

Causer's home. Based on the evidence, we are not convinced the trial court erred in finding a bow, arrows, two boxcutters, and a pocketknife are dangerous weapons. In *State v. Short Horn*, 427 N.W.2d 361 (S.D.1988), the South Dakota Supreme Court held the trial court did not clearly err in finding the defendant's pocketknife was an offensive weapon, concluding the trial court's determination of an offensive weapon, "*as contemplated by its own probation order*," was not clear error. *Short Horn*, at 364 (emphasis in original.)

[¶ 54] We also conclude the trial court did not err in finding Causer could have learned which items were prohibited under the conditions of his probation, and in rejecting Causer's argument that he was not told which items were prohibited. Causer has shown us no legal authority requiring a probation officer to provide a probationer with notice of what constitutes a "dangerous weapon," within the meaning of the conditions of his probation, nor is the probation officer required to inform the probationer what items he is allowed to possess. The trial court found Causer should have inquired as to which items he could possess. The South Dakota Supreme Court has held that the term "offensive weapon," as used in the defendant's probation agreement, was "sufficient to notify defendant that he could not conceal objects which by design were capable of causing injury." *Short Horn*, 427 N.W.2d at 364.

[¶ 55] Causer argues Thomas demonstrated she did not believe the items he possessed were truly dangerous weapons because she only confiscated two of six boxcutters and one of two sets of bows and arrows, all found during the January 31, 2003, search. This issue was not raised before the trial court, nor is there any evidence in the record to support Causer's contention that Thomas only confiscated some of the items found. We do not con-

sider questions not presented to the trial court that are raised for the first time on appeal. *Roberson*, 2001 ND 204, ¶ 5, 636 N.W.2d 926.

[¶ 56] Causer argues the "dangerous weapons" clause of his probation violates his right to due process because it is overbroad. However, Causer did not adequately brief this constitutional argument. "A party raising a constitutional challenge should bring up the heavy artillery or forego the attack entirely." *State v. Lemons*, 2004 ND 44, ¶ 24, 675 N.W.2d 148. We do not consider this argument.

[¶ 57] Causer further argues the "dangerous weapons" clause of his probation is "used as a tool in order to revoke a probationer at will and in its present language has no rehabilitative purpose what so ever [sic]." This issue was not raised before the trial court. Again, questions not raised before the trial court will not be addressed for the first time on appeal. *Roberson*, 2001 ND 204, ¶ 5, 636 N.W.2d 926.

[¶ 58] Alternatively, Causer argues evidence of the dangerous weapons should be suppressed as illegally obtained evidence because he did not give Thomas permission to enter his home. We will not address this issue because Causer failed to raise it before the trial court. *Roberson*, at ¶ 5.

[¶ 59] We affirm the trial court's revocation based on Causer's possession of dangerous weapons.

**E**

[¶ 60] Causer argues the trial court erred in revoking his probation after finding Causer refused to answer the door to allow his probation officer to conduct a home visit.

[¶ 61] Under the conditions of probation, Causer is subject to visits by his

probation officer at his residence or place of employment. The petition for revocation alleged Causer violated his probation by failing to answer his door when Thomas attempted to perform a home visit on January 31, 2003, despite the fact Causer was home. The allegation further states Causer was found hiding in his attic during a search of the residence.

[¶ 62] Causer argues the alleged violation, as set forth in the petition, is insufficient, because it fails to state Causer knew Thomas was the person knocking on his door. This issue of sufficiency of the allegation was not raised before the trial court, and we will not address it here. *See Roberson,* at ¶ 5.

[¶ 63] We conclude the trial court did not err in finding Causer violated his probation by failing to answer the door. Causer defends his refusal by stating he was unaware Thomas was present at his door. The trial court observed Causer testify about his version of the events. The trial court also heard Thomas testify that she notified Causer in January she would be conducting a home visit before the end of the month, so she believed Causer should have expected her on January 31, 2003. Thomas also testified that after repeatedly knocking on Causer's door, she entered the home with law enforcement, some of whom were in uniform, and searched the house while calling Causer's name.

[¶ 64] The trial court heard the conflicting testimony and clearly disbelieved Causer. At the revocation hearing, the trial court found, "I believe that you were quite aware of what was going on. Ms. Thomas did call ahead of time to let you know she was coming. I believe you didn't cooperate in regards to that visit, so I do find a violation." Based on the evidence, we do not believe the trial court erred in finding Causer failed to comply with the

home visit requirement under the conditions of his probation.

[¶ 65] Causer does not challenge the appropriateness of the revocation, based on the trial court's finding of a violation.

[¶ 66] We affirm the trial court's revocation based on Causer's refusal to answer his door to allow his probation officer and law enforcement to conduct a home visit.

## F

[¶ 67] Causer argues the trial court erred in revoking his probation for allegedly violating a restraining order.

[¶ 68] The State alleged the January 31, 2003, search revealed Causer was in possession of a prescription for T.L.'s minor child. The State argued this violated a restraining order dated July 9, 2002, which remained in effect until July 8, 2003.

[¶ 69] According to Causer, possession of the prescription does not allow the trial court to conclude Causer had contact with T.L. The State mistakenly argues Causer admitted to speaking with T.L. over the phone, thereby constituting contact in violation of the restraining order. The State's position is unsupported by the record. The transcript of the revocation hearing shows Causer clearly testified that T.L.'s mother, rather than T.L., called him to request he pick up the prescription, and Causer further testified he had no contact with T.L. The only evidence of contact was the presence of a prescription in the refrigerator, and Causer's testimony that he received a telephone call from T.L.'s mother. Thomas also testified about this violation, but she only confirmed the presence of the antibiotics and recited Causer's explanation of his possession of them, which was given to her at the time of the search.

[¶ 70] On appeal, both Causer and the State agree the restraining order was be-

tween Causer and T.L. The restraining order itself was not part of the record in this matter. The trial court's determination that contact with T.L.'s family constituted a violation of the restraining order in the absence of evidence to that effect, is clearly erroneous. Even if it could be found that contact with T.L.'s family constituted a violation, there is no evidence Causer initiated that contact, nor is there any evidence suggesting Causer had contact aside from the telephone call from T.L.'s mother. Merely receiving a telephone call and then possessing a prescription for the family member of a party to a restraining order, without more, does not constitute contact, even under the preponderance of the evidence standard. Based on the record, we conclude the trial court erred in determining Causer violated the restraining order.

[¶ 71] Although the trial court's finding on this point is clearly erroneous, we will not reverse and remand because we have affirmed the trial court's revocation of Causer's probation based on five other allegations.

## VI

■ [¶ 72] Causer challenges the sentence imposed by the trial court after revoking his probation on April 11, 2003. Causer argues his right against double jeopardy was violated by the trial court's imposition of additional probation as part of his resentencing. We have previously held that resentencing a defendant after a probation revocation is not a double jeopardy violation. *See State v. Jones,* 418 N.W.2d 782, 784 (N.D.1988) (holding, "[w]hen a defendant's probation is revoked, Section 12.1–32–07(4), N.D.C.C.,[1] clearly provides the trial court with the authority to resentence him to *any* sen-

tence that was available at the initial time of sentencing") (emphasis in original); *see also Davis v. State,* 2001 ND 85, ¶¶ 11, 13, 625 N.W.2d 855.

[¶ 73] When Causer was convicted of gross sexual imposition in 1994, the trial court had the authority to sentence Causer to a maximum of twenty years' imprisonment. At that time, the trial court also had authority to impose sentencing alternatives, such as probation, under N.D.C.C. § 12.1–32–02. Those options remain available to the trial court at the time of resentencing. Furthermore, in a felony case, a violation of probation may subject a defendant to an additional period of probation, not to exceed five years. *See* N.D.C.C. § 12.1–32–06.1(5) (stating, "[t]he additional period of probation may follow a period of incarceration if the defendant has not served the maximum period of incarceration available at the time of initial sentencing or deferment").

[¶ 74] Based on the foregoing, the trial court had the authority to resentence Causer to thirteen years and fifty-two days' imprisonment with credit for the six years and fifty-two days he had already served, plus three years' probation. Therefore, Causer was not subject to double jeopardy for his conviction.

■ [¶ 75] Causer argues his right to due process was also violated. However, "N.D.C.C. § 12.1–32–07(6) [gives a probationer] 'actual notice' that a violation of probation could result in the imposition of a sentence more severe than his originally imposed sentence." *Peltier v. State,* 2003 ND 27, ¶ 19, 657 N.W.2d 238. This argument is without merit.

[¶ 76] Causer argues N.D.C.C. §§ 12.1–32–02 and 12.1–32–06.1 are uncon-

---

1. Due to legislative amendments since our 1987 holding in *Jones,* N.D.C.C. § 12.1– 32.07(4) has been renumbered to N.D.C.C. § 12.1–32–07(6).

stitutional because they allow the imposition of probation after imprisonment. Causer fails to adequately brief these issues, and, therefore, we will not address them on appeal. *See, e.g., State v. Lemons*, 2004 ND 44, ¶ 24, 675 N.W.2d 148 (stating, "[a] party raising a constitutional challenge should bring up the heavy artillery or forego the attack entirely").

## VII

[¶ 77]   Causer has raised several other issues on appeal.   These issues include Causer's arguments that the State's Attorney abused his right to counsel and the case at bar is based on passions and prejudices, rather than facts.   We conclude these issues, and any other remaining issues not addressed, are without merit.

## VIII

[¶ 78]   We conclude the trial court did not err in revoking Causer's probation and sentencing him to a term of imprisonment exceeding the original sentence.   We affirm.

[¶ 79] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.